Filed 8/29/13  In re Cameron C. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re CAMERON C., a Person Coming Under the Juvenile Court Law. | B245305 (Los Angeles County Super. Ct. No. CK94666) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>RAFAEL C.,<br><br>        Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Daniel Zeke Zeidler, Judge.  Affirmed.

Mitchell Keiter, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Tracey F. Dodds, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for Minor.

* * * * * *

Rafael C. (Father) appeals from the juvenile court's jurisdictional and dispositional findings and orders pursuant to Welfare and Institutions Code section 300, subdivision (b).[1] He contends that substantial evidence does not support the juvenile court's jurisdictional finding that his son was at substantial risk of harm in a home in which the police and federal agents found a gun, drugs, and cases of illegal fireworks. Father also contends the removal order must be reversed even though he is in federal custody.

Substantial evidence supports the dependency court's findings. We affirm.

### FACTS AND PROCEDURAL BACKGROUND

***Detention from Father***

Father and Jennie P. (Mother)[2] are the parents of Cameron (born 2003). Father and Mother were not legally married and lived apart. Father had been Cameron's primary caretaker for three years. Mother visited Cameron two to three times per week. On July 17, 2012, the Drug Enforcement Administration (DEA) and the Downey Police Department's Narcotics Unit executed an arrest warrant for Father who was suspected to be involved in the distribution of methamphetamines. Inside the home, law enforcement officers found "a Ruger P345D gun, a small vial of marijuana, a baggie [of] suspected methamphetamine, a scale, and about $1,000 of illegal fireworks." Law enforcement officials requested assistance of the Los Angeles County Department of Children and Family Services (the Department), Multi-Agency Response Team to assess Cameron's safety and well-being. The case social worker (CSW) was informed by law enforcement officials that Father "had been storing and distributing methamphetamine in his home" and that arrest warrants were being executed simultaneously for two other individuals reported to be "involved in criminal activity" with Father. The CSW met with Cameron and also spoke with both Father and Mother. The Department decided to remove

---

[1]    Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

[2]    Mother is not a party to this appeal.

Cameron from Father's care given the imminent threat to Cameron's safety and the exigency that was established because of the weapon, drugs, and illegal fireworks in the home. Cameron was detained from Father and placed with Mother.

### Section 300 Petition and Detention Hearing

On July 20, 2012, the Department filed a section 300 petition on behalf of Cameron, pursuant to subdivision (b). The petition alleged that Father "established a detrimental and an endangering home environment" by the presence of a gun, marijuana, and illegal fireworks in the home. Father was not present for the detention hearing because he was in federal custody. The juvenile court continued the matter for a contested disposition.

### Jurisdiction/Disposition Reports and Hearing

In its August 27, 2012 report, the Department reported that Mother relocated to the home of Father in order to keep Cameron in his regular school. Father remained incarcerated. Cameron told the CSW that he never saw a gun, drugs, or fireworks at the house. Mother said she was "completely shocked" to find out that Father had been arrested. She never saw Father engage in any criminal activity. The CSW was unable to speak with Father at the Federal Bureau Metropolitan Detention Center.

A copy of the Downey Police Department crime report dated July 17, 2012 was attached to the jurisdiction/disposition report. According to that report, the police discovered a stolen motorcycle and several cases of aerial, mortar fired fireworks in the garage.

On August 27, 2012, the juvenile court continued the matter because Father's counsel was unable to speak with him at the detention center.

In a September 25, 2012 interim report, the Department reported that it had made numerous attempts to contact Father but was unable to do so. Likewise, Father's counsel was still unsuccessful in speaking with Father.

### Detention from Mother and Amended Section 300 Petition

On September 25, 2012, the Department received a referral alleging Cameron was the victim of general neglect and emotional abuse by Mother. According to the referral

3

Mother was up all night partying with friends and unable to get up in the morning to wake up Cameron and take him to school. Cameron was not being regularly fed or supervised. It was alleged that Mother was smoking "crystal meth" and drinking excessive amounts of alcohol. On September 26, 2012, Mother submitted to an on demand drug test, which came back positive for methamphetamines and amphetamines. On October 4, 2012, the Department filed an amended section 300 petition adding an allegation under subdivision (b) that Mother was a current user of methamphetamines and amphetamines, which rendered her incapable of providing regular care for Cameron. The juvenile court detained Cameron from Mother and placed him with his adult sister T.P.

### *Interim Review Report*

The Department submitted an interim review report dated October 22, 2012. Father told the CSW that he was arrested but the allegations against him were not true. He was advised by his attorney not to discuss any other details of his case with the CSW. He had never known Mother to use any drugs in the 17 years he had known her. Mother did not acknowledge or take responsibility for her actions and minimized her substance abuse. She denied using illegal drugs and blamed the positive toxicology report on medications she had been taking.

### *Adjudication Hearing*

On October 29, 2012, the juvenile court received into evidence the Downey Police Department arrest report and various reports from the Department. Mother testified on her own behalf and denied using methamphetamines. She stated she and her friends were dancing at a club and when she came back to the table she must have picked up someone else's drink. With respect to the allegations against Mother, her explanation was not credible. The Department noted that T.P. was not surprised when informed of Mother's toxicology report and stated "I'll bet the test was positive for meth." The Department argued the evidence was clear that Father was arrested for the allegations in the petition which placed Cameron at risk. Father argued that the Department had failed to prove a nexus between the gun, drugs, and fireworks being in the house, and the risk of physical harm to Cameron.

4

The juvenile court amended the allegations to delete references to Father's arrest and then sustained the petition as amended pursuant to section 300, subdivision (b). Specifically, the juvenile court found that Father "established a detrimental and an endangering home environment for [Cameron] in that marijuana, a Ruger gun and $1,000.00 worth of illegal fireworks were found in the child's home within access of the child. The father exposed the child to illicit drug trafficking in the child's home. Such a detrimental and endangering home environment established for the child by the father endangers the child's physical health and safety and places the child at risk of physical harm, damage, and danger."

The juvenile court sustained the allegation that Mother "is a current user of Methamphetamines and Amphetamines which renders the child's mother incapable of providing regular care of the child. . . . The child's mother's use of illicit drugs endangers the child's physical safety and emotional health and safety and creates a detrimental home environment for the child, placing the child at risk of physical and emotional harm and damage."

The juvenile court declared Cameron a dependent under section 300. Moving to disposition, the juvenile court found that there was clear and convincing evidence that there was a substantial danger to Cameron's physical health, safety, protection or physical or emotional well-being, were he returned to his parent's home. Cameron was placed under the supervision of the Department for suitable placement with T.P. Mother and Father were ordered to participate in a drug program with aftercare services, random and on demand drug testing, parent education, and individual counseling.

## DISCUSSION

### I. The Juvenile Court Properly Took Jurisdiction of Cameron

Father contends there was insufficient evidence to support the juvenile court's jurisdictional findings that he created a detrimental home environment for Cameron.

5

*A.     The Juvenile Court Properly Took Jurisdiction of Cameron Pursuant to the Allegations Regarding Mother*

The juvenile court found the allegations under section 300, subdivision (b) to be true as alleged and thereby found that Cameron came under its jurisdiction. Father contends that there was no substantial evidence to sustain the allegations concerning him. However, he concedes that the juvenile court properly took jurisdiction over Cameron on the grounds alleged regarding Mother.

"When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence. [Citations.]" (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.) In other words, "'the juvenile court's jurisdiction may rest on a single ground.' [Citation.]" (*In re Christopher C.* (2010) 182 Cal.App.4th 73, 83.)

Here the juvenile court found the allegation against Mother in the petition to be true, and Mother did not appeal the juvenile court's jurisdictional findings. The juvenile court properly took jurisdiction over the child, and we need not consider whether the other statutory grounds for jurisdiction were supported by the evidence.

However, we generally will exercise our discretion and reach the merits of a challenge to any jurisdictional finding when the finding (1) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings (*In re D.C.* (2011) 195 Cal.App.4th 1010, 1015; see *In re I.A.* (2011) 201 Cal.App.4th 1484, 1494); or (2) "could have other consequences for [the appellant], beyond jurisdiction" (*In re I.A., supra,* at p. 1493 [not reaching the merits of an appeal where an alleged father "has not suggested a single specific legal or practical consequence from this finding, either within or outside the dependency proceedings"]).

6

Here, the outcome of this appeal is the difference between Father being an "offending" parent versus a "non-offending" parent. As appellant correctly point out, such a distinction may have far-reaching implications with respect to future dependency proceedings in this case and Father's parental rights. Thus, although dependency jurisdiction over Cameron will remain in place because the findings based on Mother's conduct are unchallenged, we will review Father's appeal on the merits.

**B.** **Substantial Evidence Supports the Juvenile Court's Order Sustaining the Allegations Against Father**

Father contends that mere possession of drugs, guns, and illegal fireworks in the child's home does not create a risk of harm and was not grounds for jurisdiction. Father argues "the complete absence of any evidence of Cameron's awareness precludes a jurisdictional finding."

"The standard of proof required in a section 300 dependency hearing is the preponderance of evidence. [Citation.] [¶] 'If there is any substantial evidence to support the findings of the juvenile court, a reviewing court must uphold the trial court's findings. All reasonable inferences must be in support of the findings and the record must be viewed in the light most favorable to the juvenile court's order. [Citation.]' [Citation.]" (*In re Basilo T.* (1992) 4 Cal.App.4th 155, 168.) "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court." (*In re Matthew S.* (1988) 201 Cal.App.3d 315, 321.)

With that in mind, section 300 provides in relevant part: "Any child who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court: [¶] . . . [¶] (b) The child has suffered, or there is a *substantial risk* that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left, or by the willful or negligent failure of the

7

parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse." (§ 300, subd. (b), italics added.)

Father tries to discount the probative value of the items found in his home by discussing them in isolation. He cites the Second Amendment to the United States Constitution as giving him the right to bear arms, argues the fireworks may not have been functional, and states that "[m]arijuana use by itself does not establish the requisite substantial risk of serious physical injury." But, the circumstances surrounding Father's arrest combined with the various items found in the house where Cameron resided provided ample evidence of a substantial risk to Cameron.

The petition did not allege that Father was simply a marijuana *user*, but rather that Father exposed Cameron to drug trafficking. The CSW reported that law enforcement officials informed her that Father was involved in the sale and distribution of methamphetamines from the home where Cameron resided. Different interests are at stake in criminal prosecutions and dependency proceedings. "The rights and protections afforded parents in a dependency proceeding are not the same as those afforded to the accused in a criminal proceeding. For example, a juvenile court may rely on hearsay contained in a social worker's report to support a jurisdictional finding in a dependency case, although such evidence could not be used to establish guilt in a criminal proceeding." (*In re James F.* (2008) 42 Cal.4th 901, 915.)

Among the items recovered from Father's home which suggested Father was involved in the narcotics business were a small vial of marijuana, a baggie of what appeared to be methamphetamine, and a scale which is commonly used to weigh drugs for sale. The presence of the firearm demonstrated that Father was ready to engage in a serious violent confrontation in the home should the circumstances arise. As numerous courts have noted, drugs and guns go together. (See, e.g., *People v. Bland* (1995) 10 Cal.4th 991, 1005 ["Drug dealers are known to keep guns to protect not only themselves, but also their drugs and drug proceeds; ready access to a gun is often crucial to a drug

8

dealer's commercial success"]; *People v. Glaser* (1995) 11 Cal.4th 354, 367 [firearms are "'tools of the trade'" in "'narcotics business'"].)

The physical items recovered from Father's house were directly linked to the inherently dangerous activity of drug dealing. Therefore, substantial evidence supported the juvenile court's finding that Cameron was described by section 300, subdivision (b) as a result of Father's conduct.

## II. Substantial Evidence Supported the Juvenile Court's Removal of Cameron from Father

Father also contends there is insufficient evidence to support the juvenile court's removal order, and Cameron should be released to him even though he is in custody and cannot immediately care for his son. Again, we disagree.

Pursuant to section 361, subdivision (c)(1), the juvenile court may remove a dependent child from his parents' custody upon clear and convincing evidence of a substantial danger to the child's physical health or well-being if there are no other reasonable means to protect the child. Such an order "is proper if it is based on proof of parental inability to provide proper care for the minor and proof of a potential detriment to the minor if he or she remains with the parent. [Citation.] The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child. [Citations.]" (*In re Diamond H.* (2000) 82 Cal.App.4th 1127, 1136, overruled on other grounds in *Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 736.)

Father argues Cameron's removal was unjustified because although he is incarcerated, he could make plans for Cameron's temporary care. In so arguing, Father relies on *In re Isayah C.* (2004) 118 Cal.App.4th 684 (*Isayah C.*), but that case is inapt.

In *Isayah C.*, the juvenile erred by removing custody from a *non-offending* father who was incarcerated in San Quentin: because the father planned to send the child to live with relatives pending his release from prison, it was "impermissible" for the court to consider the father's incarceration as a detriment to the child. (*Isayah C., supra,* 118

9

Cal.App.4th at pp. 700–701.) In contrast to the father in *Isayah C.,* Father is not non-offending and his argument fails.

**DISPOSITION**

The orders of the juvenile court are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J. *

FERNS

We concur:


_____, P. J.

BOREN


_____, J.

ASHMANN-GERST

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.