Filed 11/25/13  P. v. Lopez CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>DANIELLA LOPEZ,<br><br>    Defendant and Appellant. | C065012<br><br>(Super. Ct. No. 09F07826) |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>DAVID AZUA,<br><br>    Defendant and Appellant. | C065277<br><br>(Super. Ct. No. 09F07826) |

1

Following a jury trial, defendant David Azua was convicted of vehicle theft (Veh. Code, § 10851, subd. (a)--count one), and possession of a stolen vehicle (Pen. Code, § 496d, subd. (a)--count two), and defendant Daniella Lopez was convicted of vehicle theft (Veh. Code, § 10851, subd. (a)--count one), possession of a stolen vehicle (Pen. Code, § 496d, subd. (a)--count two), possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)--count three), and residential burglary (Pen. Code, § 459--count four). As to defendant Lopez, the jury found true the allegation that she was a principal armed with a firearm during the commission of counts one through three. (Pen. Code, § 12022, subd. (a)(1).) Defendant Azua admitted a strike allegation and was sentenced to four years in state prison. Defendant Lopez was sentenced to four years four months in state prison.

On appeal, defendant Azua contends the trial court failed to determine his ability to pay the cost of the probation report, and his counsel was ineffective because he did not raise the issue with the trial court. Defendant Lopez contends on appeal that there was insufficient evidence to sustain the armed with a firearm enhancement, the trial court failed to determine her ability to pay the cost of the probation report, and there is an error in the abstract of judgment.

We order a correction to defendant Lopez's abstract of judgment and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 15, 2009, William Cardenas was getting ready to leave for work from his home in Atwater. Cardenas started his green Ford Aerostar van, but then left the idling van in the driveway to go back inside to get a cup of coffee he had forgotten. Cardenas heard the engine revving and went outside, where he saw a light-skinned Hispanic woman backing up the van. Cardenas got in his wife's car and they chased the van.

At one point, Cardenas was able to get out of the car and tried to grab the van's door, but he fell down when the van accelerated and drove off. However, he was able to

2

get a second look at the woman, whom he identified as defendant Lopez in a photographic lineup and at trial. Cardenas's wallet, which contained his identification and between $600 and $800, had been in the van when it was stolen.

Three days later, on October 18, 2009 around 3:50 a.m., Elizabeth Grundman, a resident on Eschinger Road in rural Elk Grove, was awakened by her barking dogs and saw a green van driving slowly by the front of her house. The van turned, came back and drove into her driveway, which led toward the vineyard in the back. She went outside and a man got out of the van, claiming he was looking for someone. Grundman asked the man to leave. The man then drove the van to another driveway and drove into the vineyard approximately a quarter of a mile. Thereafter, Grundman heard screaming and yelling. She called 911. Thirty minutes later, Grundman saw the van drive back out toward Eschinger Road. It was wet and rainy that night.

Around 4:25 a.m., sheriff's deputies found the van, apparently stuck in the mud, 20 to 25 yards off Eschinger road at the edge of the vineyard line in clear view from the road. They searched the van and area and found no one in or around the van. The deputies left the scene about 5:30 a.m.

Around 5:25 a.m., defendant Azua walked into a nearby dairy where Guillermo Peña worked and asked him for a ride to a friend's house. Peña said he could not because he was working. Azua then asked one of Peña's coworkers, Edgar Reyes, for a ride to his aunt's house to get a work application. Reyes agreed to give Azua a ride. Azua told Reyes the aunt lived on Eschinger Road. They could not find the house, so they returned to the dairy and waited until daylight and then drove out again, purportedly in search of the aunt's house.

As Reyes drove down Eschinger Road, a woman came running out of a field less than a mile from the dairy ranch. Azua told Reyes the woman was his girlfriend and told him to turn around. Reyes identified the woman as Lopez. After Lopez got in the backseat of the car, Azua asked Reyes to help them get a nearby van. Reyes agreed,

3

and drove to a nearby green van, which was stuck in the mud near the area where Reyes first saw Lopez. Lopez got out and retrieved a cable from inside the van, which she attached to the van's rear bumper and the front bumper of Reyes's vehicle. Lopez got into the driver's seat of the van and with both vehicles running, Reyes tried to pull the van out, but the cable broke. Lopez attached the cable again, but the cable broke a second time. Reyes testified that a Sacramento County sheriff's deputy thereafter arrived at the scene.

Sacramento County Sheriff's Deputy Michelle Allen had been briefed on the abandoned van. Deputy Allen ran the Aerostar's license plate and vehicle identification number, and determined the Aerostar was Cardenas's stolen van, and that the license plates had been switched with another green Aerostar van registered to another person in Atwater.

Thereafter, Deputy Allen went to the location, arriving around 7:46 a.m. She found the green Ford Aerostar van and a gray Ford Explorer, with a chain running from the Aerostar's rear bumper to the Explorer's front bumper. The van was running. Deputy Allen saw two men and one woman in the area -- Reyes was near the driver's side door of the Explorer, while Lopez and Azua were standing near the open passenger side door of the Aerostar.

Deputy Allen handcuffed Reyes, as he was the closest to her, and placed him in her patrol vehicle. She next detained Azua in her patrol vehicle. When Deputy Allen went back for Lopez, who had been standing by the open passenger door of the van, Deputy Allen found that Lopez was gone. Deputy Allen did not see the direction Lopez fled. A coat Lopez had been wearing when Deputy Allen first saw her was found on the scene close to the pavement on Eschinger Road.

Azua told Deputy Allen that he was trying to find a "cow place" to get a job there, and had asked Reyes for a ride to Atwater. They came upon a woman in a van stuck in

4

the mud, and tried to help the woman. Azua claimed he did not know the woman from the van and said he was only trying to help her.

A purse was found in a ditch near the van. There is no pedestrian traffic in the area. To the deputies, the purse appeared out of place and associated with the crime they were investigating. The purse contained an unloaded .38-caliber pistol, two coin-sized Ziplock baggies containing methamphetamine, Cardenas's identification card, $540 in cash, and a piece of paper with a list of phone numbers and associated nicknames. On the back of the list was the notation "my #," followed by "(AzuaX13XATL5300@yahoo.com)."

Around 12:27 p.m., Deputy Allen and other officers responded to a residential alarm call at the nearby home of Marilyn Wackman, approximately one-eighth of a mile from where the stolen van was found. Deputies found a rear window in a door at the Wackman home that had been shattered, along with other evidence of a burglary, including an opened jewelry armoire, an opened nightstand drawer, and an opened dresser cabinet, as well as the disassembled doorbell, which was on a chair.

A sheriff's canine found Lopez lying on her stomach in the mud in the Wackman's vineyard. Lopez had .3 grams of methamphetamine in her pants coin pocket.

## DISCUSSION

### I. Sufficiency of Evidence as to
### Arming Enhancement Alleged Against Lopez

The jury found true the enhancement allegation that Lopez was armed with a firearm in the commission of the vehicle theft, possession of a stolen vehicle, and possession of methamphetamine offenses. (Pen. Code, § 12022, subd. (a)(1).)[1]

---

[1] Undesignated statutory references are to the Penal Code.

Defendant Lopez contends the evidence was insufficient to support the jury's findings. We disagree.

The law governing Lopez's claim is well settled. The test for sufficiency of the evidence to support an enhancement is whether, after viewing the evidence in the light most favorable to the judgment, any rational trier of fact could have found the elements of the enhancement beyond a reasonable doubt. (*People v. Alvarez* (1996) 14 Cal.4th 155, 225.) As with any substantial evidence claim, " '[w]e presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] The same standard of review applies to cases in which the prosecution relies primarily on circumstantial evidence . . . . [Citation.] "[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding." ' " (*People v. Nelson* (2011) 51 Cal.4th 198, 210.)

A defendant is "armed" within the meaning of section 12022 "if the defendant has the specified weapon available for use, either offensively or defensively. [Citations.] . . . '[A] firearm that is available for use as a weapon creates the very real danger it will be used.' [Citation.] Therefore, '[i]t is the availability--the ready access--of the weapon that constitutes arming.' [Citation.]" (*People v. Bland* (1995) 10 Cal.4th 991, 997 (*Bland*).) "[A]rming under the sentence enhancement statutes does not require that a defendant utilize a firearm or even carry one on the body." (*Ibid.*, italics omitted.)

Lopez asserts there is no evidence she ever actually possessed the purse that contained the gun. She points out that the purse containing the gun was not found on her person and it contained no identifying information indicating she was the owner.

The jury reasonably could conclude that the purse was directly tied to the theft of Cardenas's van and, therefore, to Lopez. The purse contained Cardenas's identification card, as well as a substantial amount of cash, two items Cardenas said were in the van when it was stolen. Lopez was the only woman associated with the van. Cardenas

6

identified her as the person who stole his van, and she was the only woman present when Deputy Allen arrived at the scene. Lopez was standing by the passenger door while Deputy Allen put Reyes and Azua in her patrol vehicle, evidence from which the jury could infer that Lopez removed the purse from the van before fleeing. Indeed, based on the evidence, we see no other reasonable explanation why a purse containing the victim's identification, a large amount of money, a gun, and the same kind of drugs Lopez had in her pants pocket wound up in a ditch near the stolen van. Moreover, Deputy Stearns testified that the area where the purse was found was muddy and there was morning dew. The purse, however, was dry and it was warmer than the surrounding air, indicating to the deputy it had not been outside for long. The jury reasonably could conclude that Lopez, rather than one of the two men (Azua or the good Samaritan, Reyes), grabbed the purse from inside the van after Deputy Allen arrived, and dropped it when she ran away.[2] That inference is bolstered by the fact she also discarded the jacket she had been wearing. Thus, the evidence is sufficient to establish a nexus between the weapon and the vehicle

---

[2] We observe that the enhancement could apply to all principals to a crime. Section 12022, subdivision (a)(1) provides in pertinent part: "This additional term shall apply to any person who is a principal in the commission of a felony or attempted felony if one or more of the principals is armed with a firearm, whether or not the person is personally armed with a firearm." "In other words, a defendant is 'armed with a firearm' within the meaning of this subdivision if he or she participates as a principal in a crime in which one or more principals is armed." (*People v. Paul* (1998) 18 Cal.4th 698, 706.) Thus, liability is vicarious and extends to any principal whether or not personally armed. (*Bland*, *supra*, 10 Cal.4th at p. 998, fn. 3.) There is no requirement an aider and abettor know any principal is armed with a firearm to be found vicariously armed under section 12022, subdivision (a)(1). (*People v. Overten* (1994) 28 Cal.App.4th 1497, 1501-1504.) Although the jury was instructed about a principal being armed, the court told the jury it must decide whether the prosecution proved "that defendant Lopez was armed with a firearm" during the commission of the crimes. The prosecution argued to the jury that defendant had possessed the purse and its contents. The prosecution did not advance vicarious arming as an alternative theory. The verdict forms reflected the jury's finding that Lopez "was a principal in the commission of" the charged crimes "and armed with a firearm."

7

theft, possession of a stolen vehicle, and possession of methamphetamine counts. The enhancement is supported by substantial evidence.

## II. Ability to Pay Cost of Probation Report

The trial court ordered defendants to each pay a $702 fee for the cost of the probation report pursuant to section 1203.1b. The fee was mentioned in the probation reports, and neither defendant objected when the trial court imposed it. Indeed, when the trial court asked counsel for Azua at the end of the pronouncement of judgment whether there was "[a]nything else," counsel replied, "No, your Honor." When the court asked counsel for Lopez whether "[the court had] overlooked anything," counsel replied, "I don't believe so."

On appeal, defendants contend there is insufficient evidence to establish they had the ability to pay the fee.

The People argue defendants have forfeited this argument by not objecting in the trial court. We agree. Defendants forfeited their challenge to their ability to pay claim by failing to raise the issue in the trial court. (*People v. Snow* (2013) 219 Cal.App.4th 1148, 1151; *People v. Valtakis* (2003) 105 Cal.App.4th 1066, 1068.)

## III. Ineffective Assistance of Counsel

Anticipating we might reject their probation report fee claim on forfeiture grounds, defendants contend their attorneys were constitutionally ineffective for failing to object to the imposition of the fee without a determination of defendants' ability to pay.

To establish ineffective assistance of counsel, a defendant must show (1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms, and (2) the deficient performance prejudiced defendant. (*Strickland v. Washington* (1984) 466 U.S. 668, 691-692 [80 L.Ed.2d 674] (*Strickland*); *People v. Ledesma* (1987) 43 Cal.3d 171, 216-217.) To show prejudice, a defendant must show a reasonable probability that s/he would have received a more favorable result

8

had counsel's performance not been deficient.  (*Strickland*, *supra*, 466 U.S. at pp. 693-694; *Ledesma*, *supra*, 43 Cal.3d at pp. 217-218.)

As our high court held in *People v. Tello* (1997) 15 Cal.4th 264, 266, if the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged, a claim of ineffective assistance of counsel must be rejected unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation.  Indeed, "[a] court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance."  (*Harrington v. Richter* (2011) ___ U.S. ___; [178 L.Ed.2d 624, 642]; *Strickland*, *supra*, 466 U.S. at p. 689.)  Here, we do not know why counsel did not object to the trial court's order, and on the record before us, we cannot say there is no reasonable explanation for failing to do so.  Indeed, for all we know, both counsel knew their clients had the ability to pay, so any objection would have been futile.  We cannot find counsel's performance to be deficient.

Moreover, because the record does not establish that either defendant was unable to pay the $702 fee, we cannot conclude there is a reasonable probability either defendant would have had a more favorable outcome had counsel objected.  Consequently, defendants have failed to meet their burden of establishing prejudice.

### VI.  Error in Abstract

Defendant Lopez points out an error in the abstract.  The abstract indicates Lopez's sentence was enhanced pursuant to section 12022.1, when it was in fact enhanced under section 12022, subdivision (a)(1).  This must be corrected.

### DISPOSITION

The judgments are affirmed.  The trial court is directed to prepare a corrected abstract of judgment for defendant Lopez reflecting that her sentence was enhanced pursuant to Penal Code section 12022, subdivision (a)(1) rather than Penal Code

9

section 12022.1, and to forward a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.

        MURRAY        , J.

We concur:

        BLEASE        , Acting P. J.

        HULL        , J.