Filed 11/20/15  In re Layla R. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re LAYLA R. et al., Persons Coming Under the Juvenile Court Law. | B262784 |
| | (Los Angeles County Super. Ct. No. DK09274) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| A.G., | |
| Defendant and Appellant. | |

APPEAL from a judgment and an order of the Superior Court of Los Angeles County, Marilyn Kading Martinez, Referee.  Affirmed.

Claire Abrams for Defendant and Appellant.

Mary C. Wickham, Interim County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Peter Ferrera, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

Mother A.G. appeals from the juvenile court's judgment finding jurisdiction under Welfare and Institutions Code[1] section 300 and dispositional order under section 361 removing her five-year-old daughter, Layla, and two-year-old son, Caden, from her custody. We affirm because the jurisdictional finding and the dispositional order were supported by substantial evidence that Mother's participation in a conspiracy to smuggle narcotics to her gang-member boyfriend, who was incarcerated in county jail on murder charges, and Mother's egregiously poor judgment endangered the children and placed them at substantial risk of harm. Short of removal from Mother's custody, there were no reasonable means to avert harm to the children.

## FACTS AND PROCEDURAL BACKGROUND

Mother has a five-year-old daughter, Layla, and a two-year-old son, Caden. The whereabouts of Layla's presumed father, Jesse R., and Caden's alleged father, Hector G., are unknown. Neither father has been involved in the children's lives. At the time Los Angeles County Department of Children and Family Services (DCFS) became involved in this case, Mother lived in a one-room studio apartment with the maternal great-grandparents and the two children.

On January 21, 2015, the Los Angeles Police Department arrested Mother and charged her with criminal conspiracy under Penal Code section 182(a)(1). Law enforcement recorded Mother on the phone with her then-incarcerated boyfriend, Travis, conspiring to smuggle drugs into and sell drugs in the county jail. Travis, an active Reseda gang member, was in custody on a murder charge. Mother dated Travis intermittently since high school, and was dating him steadily for about seven months before his arrest on the murder charges. By that point in time, Mother had instructed Layla to call Travis "Daddy," and Mother had "Travis" tattooed on her left arm.

Although Mother denied any knowledge regarding the basis for her arrest to a DCFS social worker, Mother later admitted to the police that she: paid four hundred

---

[1] All subsequent statutory references are to the Welfare and Institutions Code.

dollars to purchase heroin to smuggle into her jailed boyfriend, stored the narcotics in her purse, and gave the drugs to Travis' mother to deliver to the jail. Mother stated that Travis promised that he would send Mother the proceeds from the sale of these narcotics, but Mother had not received any money. Mother's bank accounts and police recordings of her conversations with Travis verified her admissions. In the recorded conversations, Travis had asked Mother to provide narcotics for him to sell in the county jail, Mother had reported to Travis that she had purchased narcotics for him and was planning on obtaining more, and Mother had told Travis that the drugs were "in her purse."

When Mother was arrested, both children were taken into protective custody. Mother was released on bail shortly thereafter. Several days later, on January 26, 2015, the DCFS filed petitions pursuant to section 300, subdivisions (b) and (g) on the behalf of Layla and Caden. The petitions alleged that the children had suffered or there was a substantial risk that they would suffer serious physical harm as a result of (1) Mother's conspiracy to smuggle drugs and (2) the parents' absence due in part to Mother's arrest and incarceration and in part to the fathers' unknown whereabouts.

Also on January 26, 2015, the juvenile court ordered the children detained from Mother's custody due to her conspiracy charges and the unknown whereabouts of the fathers. Based on interviews with Mother, the maternal great grandmother, and law enforcement, DCFS concluded that the children's safety could not be ensured if they were released to Mother. The juvenile court ordered DCFS to evaluate the maternal grandparents for placement. On February 11, 2015, the juvenile court ordered the children detained in the home of the maternal grandparents, who had previously lived with and maintained a close relationship with the children.

During its investigation, DCFS attempted to interview Mother regarding her involvement in the drug smuggling conspiracy, but Mother declined to speak with the social worker on the advice of her criminal defense attorney. DCFS based its dependency case on the recorded telephone calls between Mother and Travis, statements Mother made to police, other evidence obtained by police regarding Mother's involvement in the conspiracy, as well as DCFS interviews with the family.

3

At the March 12, 2015 jurisdiction and disposition hearing, Mother's attorney argued that DCFS failed to prove that the children were at risk of harm per subdivision (b), or that Mother was currently incarcerated and incapable of providing the children with care and supervision as required under subdivision (g). Mother argued that the criminal allegations were not the same as a conviction and were insufficient to support jurisdiction. Mother asserted that she was ready and willing to care for her children and that they should be released to her.

The juvenile court found jurisdiction under section 300, subdivision (b), finding clear and convincing evidence that Mother conspired to smuggle narcotics into the county jail to her boyfriend, who she knew was an active gang member accused of murder. The court explained that it sustained jurisdiction under subdivision (b) based on Mother's extreme negligence in properly parenting her children. The court concluded that Mother placed the welfare of an incarcerated gang-member boyfriend ahead of the interests of her very young children, and found that Mother's relationship with Travis and her participation in the conspiracy placed her children at risk of harm or damage. The court also found that short of removal from Mother's custody, there was no reasonable means of protecting the children from Mother's poor judgment. The juvenile court noted that there was no evidence that Mother had taken responsibility for her actions or understood how "egregiously wrong" her actions had been. In addition, the juvenile court sustained jurisdiction under subdivision (g) solely as to the children's fathers because their whereabouts were unknown.

The court ordered the children to be removed from Mother and placed with the maternal grandparents. The court ordered Mother to have monitored, regular visits and be provided with reunification services. The court also ordered that Mother complete parenting and individual counseling, verify a sober and stable lifestyle, submit to random drug tests, and participate in a drug rehabilitation program if she missed or had a dirty test.

4

**DISCUSSION**

Mother appeals the court's jurisdictional findings pursuant to section 300, subdivisions (b) and (g), and dispositional order removing the children from her care.

**1.      Standards of Review**

We review the juvenile court's jurisdictional findings and disposition orders for substantial evidence.  (*Los Angeles County Department. of Children & Family Services v. Superior Court of Los Angeles County* (2013) 215 Cal.App.4th 962, 966.)  "Substantial evidence is relevant evidence which adequately supports a conclusion; it is evidence which is reasonable in nature, credible and of solid value."  (*In re R.C.* (2012) 210 Cal.App.4th 930, 941.)  Although substantial evidence may consist of inferences, the inferences must be logical, reasonable and supported by evidence; the inferences cannot be the product of speculation or conjecture.  (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393-94.)  Conflicts in the evidence and reasonable inferences are resolved in favor of the prevailing party.  (*In re Ricardo L.* (2003) 109 Cal.App.4th 552, 564.)  "[I]ssues of fact and credibility are questions for the trier of fact."  (*Ibid.*)  The juvenile determination will not be disturbed unless it exceeds the bounds of reason.  (*Ibid.*)

**2.      The Jurisdictional Findings Were Supported by Substantial Evidence.**

Mother contends the evidence is insufficient to support the juvenile court's jurisdictional findings.  We disagree and affirm its judgment pursuant to section 300, subdivision (b).[2]  Under this provision, a child falls within the jurisdiction of the juvenile court when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his . . . parent . . . to adequately supervise or protect the child, or the willful or negligent failure of the

---

[2]      "When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence." (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.)  We thus solely review and affirm the court's jurisdiction over the children based on the court's finding pursuant to section 300, subdivision (b).

child's parent . . . to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left, or by the willful or negligent failure of the parent or guardian to provide the child with . . . shelter, . . . or by the inability of the parent or guardian to provide regular care for the child due to the parent's . . . substance abuse." (§ 300, subd. (b).) To find jurisdiction under section 300, subdivision (b) the court must find (1) neglectful conduct by the parent, (2) causation, and (3) serious physical harm or a substantial risk of serious harm to the children. *(In re James R.* (2009) 176 Cal.App.4th 129, 135.) "The third element 'effectively requires a showing that at the time of the jurisdictional hearing the child is at substantial risk of serious physical harm in the future (e.g., evidence showing a substantial risk that past physical harm will reoccur).' [Citation.]" (*Ibid.*)

Here, Mother took instructions from and agreed to assist an alleged murderer in a plot to sell drugs within a correctional facility. Mother obtained money from her bank account to purchase the drugs, purchased the narcotics from drug dealers on more than one occasion, and stored heroin in her purse, likely in the presence of her children, prior to conveying it to a third party. Mother's criminal activity was not a brief lapse in judgment. Mother's admissions, recorded conversations, and bank statements establish that she was a significant participant in inherently dangerous criminal activities with people known to her to be dangerous. (See, e.g., *People v. Bland* (1995) 10 Cal.4th 991, 1005.)

In addition, Mother's involvement with Travis was not a momentary fling, and she permitted his access to and encouraged his relationship with her children. Mother's affiliation with Travis went back years. Mother admitted he was an active member of the Reseda gang and the evidence indicates that she had knowledge that he possessed drugs when he was with her. Despite these obvious dangers, Mother continued to have a relationship with Travis. Travis was so integral to Mother's life that she instructed her daughter Layla to call him "Daddy." After Travis was arrested on murder charges, Mother remained so committed to him that she participated in a criminal conspiracy to smuggle drugs into jail for him. This relationship provided the juvenile court with ample

6

reason beyond mere speculation to believe that Mother lacked the ability to protect and exercise custody of her children in a safe manner.

Mother asserts that the mere fact that she was arrested does not constitute substantial evidence to support a finding that she posed substantial risk of serious harm to her children. She cites in support of that contention *In re Jesus M.* (2015) 235°Cal.App.4th 104, 106. In that decision, the court concluded that substantial evidence did not support jurisdiction based on stale incidents of father's violation of a restraining order. (*Id.* at p. 112 ["[W]e are repeatedly called on to review jurisdictional findings where, as here, one parent has behaved badly, undeniably causing family trauma, but presents no obvious threat to the children's physical safety."]) The *In re Jesus M.* court described the father's two instances of bad behavior, which occurred three years prior to the dependency case, as "in the past." (*In re Jesus M., supra,* 235 Cal.App.4th at p. 113.)

In contrast, Mother's criminal conduct and bad judgment at issue here are recent and clearly pose a risk of harm to the children. Mother chose to repeatedly expose her children to this dangerous individual and assist him in his criminal scheming. Mother acted in clear disregard for her safety and in disregard of the well-being of her children. At the time of the jurisdiction and dispositional hearing, Mother's egregiously poor judgment posed a substantial and present risk of danger to the children and evidenced that she lacked the ability to make sound parenting choices due to her ongoing involvement with Travis and his gang activities. (See *In re N.M.* (2011) 197 Cal.App.4th 159, 165 [The court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child.].)

We therefore conclude that substantial evidence supported the court's finding of jurisdiction pursuant to section 300, subdivision (b).

## 3. Substantial Evidence Supports the Dispositional Order Removing the Children

Mother asserts that DCFS should not have removed Layla and Caden from her care in rendering its dispositional order. Mother asserts that there were no reasonable

efforts made by DCFS to prevent the children's removal from her care, and that because Mother was released on bail, the children would have been "safe and secure" with her.

Under section 361, subdivision (c)(1) children may not be removed from their parent's home "unless the juvenile court finds clear and convincing evidence" of a "substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's or guardian's physical custody." "A removal order is proper if it is based on proof of (1) parental inability to provide proper care for the minor and (2) potential detriment to the minor if he or she remains with the parent." (*In re T.W.* (2013) 214 Cal.App.4th 1154, 1163.) Upon satisfying these prongs, the removal is appropriate even if the parent is not dangerous and the minor at issue has not yet been harmed. (*Ibid*.) "The focus of the statute is on averting harm to the child." (*Ibid*.)

The record fails to support Mother's contentions. As explained at length above, Mother demonstrated that she lacked the ability to make proper parenting choices and exposed her children to danger through her romantic relationship and criminal partnership with a drug-dealing active gang member, imprisoned on murder charges. This is substantial evidence of Mother's inability to provide proper care for the children and that the children would likely suffer detriment if left in her care and subjected to her poor judgment.

To the extent that Mother asserts DCFS failed to engage in reasonable efforts to keep the children in her care within the home she shared with the maternal great-grandparents, we disagree. DCFS investigated this living situation and determined it to be infeasible. The maternal great-grandparents expressly acknowledged that their single-room studio apartment lacked sufficient space to house the children and Mother. Thus, for practical reasons the children could not return to Mother's care, even despite her extremely poor judgment and criminal conduct, because Mother did not have appropriate housing to accommodate the children.

8

We thus conclude that the juvenile court's dispositional order removing the children from Mother's care was supported by substantial evidence.[3]

---

[3] To the extent that Mother asserts on appeal that the children ought not to have been placed with maternal grandmother in Chowchilla, Mother did not object at trial to the children's placement there nor did she assert that it interfered with family reunification. Mother solely argued that the children should have been returned to her care. As this issue regarding the children's placement with family in Chowchilla was not raised earlier, it cannot be considered for the first time on appeal. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 54 [The appropriateness of a child's placement following a finding of jurisdiction "is an intensely factual issue . . . ; it is not an issue which may be raised for the first time on appeal."].)

## DISPOSITION

The juvenile court's judgment finding jurisdiction and dispositional order are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                                        JONES, J. *

We concur:



        ALDRICH, Acting P. J.



        LAVIN, J.

---

*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.