[No. S032900. July 27, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
MARVIN BLAND, Defendant and Appellant.

**COUNSEL**

Teri Sklar, under appointment by the Supreme Court, for Defendant and Appellant.

Gary M. Mandinach as Amicus Curiae on behalf of Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General,

Edgar A. Kerry and Robert P. Whitlock, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

KENNARD, J.—Penal Code section 12022[1] imposes an additional prison term for anyone "armed with a firearm in the commission" of a felony. The question we resolve here is this: is a defendant convicted of a possessory drug offense subject to this "arming" enhancement when the defendant possesses both drugs and a gun, and keeps them together, but is not present when the police seize them from the defendant's house? The answer is: yes.

Possessory drug offenses are continuing crimes that extend throughout a defendant's assertion of dominion and control over the drugs, even when the drugs are not in the defendant's immediate physical presence. Therefore, when the prosecution has proved a charge of felony drug possession, and the evidence at trial shows that a firearm was found in close proximity to the illegal drugs in a place frequented by the defendant, a jury may reasonably infer: (1) that the defendant knew of the firearm's presence; (2) that its presence together with the drugs was not accidental or coincidental; and (3) that, at some point during the period of illegal drug possession, the defendant had the firearm close at hand and thus available for immediate use to aid in the drug offense. These reasonable inferences, if not refuted by defense evidence, are sufficient to warrant a determination that the defendant was "armed with a firearm in the commission" of a felony within the meaning of section 12022.

I

On March 21, 1990, officers of the Fresno Police Department, who were investigating defendant's possible involvement in the theft of auto parts, searched his house. In the course of that search, the officers retrieved from defendant's bedroom closet 17.95 grams of rock cocaine in a plastic baggie. A nearby duffel bag contained items commonly associated with the sale or manufacture of cocaine base: a gram scale, plastic baggies, and Pyrex glass containers, some bearing white residue. In the same room, under the bed, was a cache of unloaded firearms, including an assault weapon (a Colt AR-15 semiautomatic .223-caliber rifle). A photograph in the room depicted defendant with this assault rifle. At the time of the search, defendant was in a police car outside the house.

A jury convicted defendant of two counts of possession of cocaine base for the purpose of sale, a felony. (Health & Saf. Code, § 11351.5.) With

---

[1]Further undesignated statutory references are to the Penal Code.

respect to the first of these two counts, the jury found that in the commission of the underlying drug offense defendant was armed with an assault weapon within the meaning of section 12022, subdivision (a)(2), thus subjecting him to an additional three-year prison term.[2]

The Court of Appeal affirmed defendant's convictions for the drug offenses, but it struck the three-year sentence enhancement. In the court's view, the semiautomatic rifle the police had recovered from under defendant's bed in the same room where the police found the rock cocaine was not "available" for defendant's use in committing the felony of possession of cocaine base for the purpose of sale. Because defendant was outside the house when the officers retrieved the assault weapon, the court reasoned, "there was no way defendant could have 'reached' " that weapon inside the house. The court went on to state: "The legislative intent behind section 12022, to deter criminals from creating the potential for death or great injury by having firearms *accessible* at the scene of the crime, is not furthered here. The potential for the danger contemplated by section 12022 was not created by the presence of unloaded firearms in [defendant's] house when defendant was not inside the house."

Thus, the Court of Appeal's focus was on defendant's proximity to the assault weapon *at the time the police found the cocaine and the assault weapon in defendant's bedroom.* In narrowing the focus the court erred, as we shall explain.

## II

Before discussing the merits of the issue in this case, we briefly review sections 12022 and 12022.5, which impose additional prison terms for felonies in which the defendant was armed with or used a firearm. Both provisions appear in the Dangerous Weapons' Control Law (§ 12000 et seq.). As the Court of Appeal in *People* v. *Reaves* (1974) 42 Cal.App.3d 852, 856 [117 Cal.Rptr. 163] observed, the Legislature enacted these provisions "to deter persons from creating a potential for death or injury resulting from the very presence of a firearm at the scene of a crime."

In these two statutes, the Legislature drew a distinction between being *armed* with a firearm in the commission of a felony and *using* a firearm in the commission of a felony, and it made firearm *use* subject to more severe

---

[2]The first of the two counts of possession of cocaine base for sale, which gave rise to the "arming" enhancement, was based on the cocaine found in defendant's bedroom closet during the March 21, 1990, search. The second count arose from police execution of a search warrant at defendant's house on April 24, 1990, when he was released on bail and awaiting trial on the offense alleged in count I.

penalties. (Compare § 12022.5 [providing for increased punishment of between three and ten years for firearm *use* in the commission of a felony] with § 12022 [in general imposing a one-year sentence enhancement for being *armed* with a firearm in the commission of a felony, but providing for a three-year added penalty in the case of certain firearms and certain felonies].)

In *People* v. *Chambers* (1972) 7 Cal.3d 666, 672 [102 Cal.Rptr. 776, 498 P.2d 1024], we explained the distinction between *use* and *arming* this way: "By employing the term 'uses' instead of 'while armed' the Legislature requires something more than merely being armed. (*People* v. *Washington* (1971) 17 Cal.App.3d 470, 474 [94 Cal.Rptr. 882].) One who is armed with a concealed weapon may have the potential to harm or threaten harm to the victim and those who might attempt to interrupt the commission of the crime or effect an arrest. (See *People* v. *Pheaster* (1963) 215 Cal.App.2d 754 [30 Cal.Rptr. 363].) Although the use of a firearm connotes something more than a bare potential for use, there need not be conduct which actually produces harm but only conduct which produces a fear of harm or force by means or display of a firearm in aiding the commission of one of the specified felonies. 'Use' means, among other things, 'to carry out a purpose or action by means of,' to 'make instrumental to an end or process,' and to 'apply to advantage.' (Webster's New Internat. Dict. (3d ed. 1961).)" We then concluded in *Chambers* (7 Cal.3d at pp. 672-673) that the defendant, who had demanded money from the victim at gunpoint, *used* the gun "at least as an aid" in the commission of the completed crime of robbery.

In contrast, *arming* under the sentence enhancement statutes does not require that a defendant utilize a firearm or even carry one on the body. A defendant is *armed* if the defendant has the specified weapon available for use, either offensively or defensively. (*People* v. *Reaves, supra,* 42 Cal.App.3d 852, 856-857; *People* v. *Superior Court (Pomilia)* (1991) 235 Cal.App.3d 1464, 1472 [1 Cal.Rptr.2d 386]; see CALJIC No. 17.15 ["The term 'armed with a firearm' means knowingly to carry a firearm or have it available as a means of offense or defense"].) As a recent Court of Appeal decision observed, "a firearm that is available for use as a weapon creates the very real danger it will be used." (*People* v. *Mendival* (1992) 2 Cal.App.4th 562, 573 [3 Cal.Rptr.2d 566].) Therefore, "[i]t is the availability—the ready access—of the weapon that constitutes arming." (*Id.* at p. 574.) Other Courts of Appeal have come to a similar conclusion. Thus, evidence that during the defendant's commission of a rape, a screwdriver left at the foot of the bed by the defendant's crime partner would have been visible to the defendant, was sufficient to show that the defendant was "armed" with a deadly weapon during the rape. (*People* v. *Martinez* (1984)

150 Cal.App. 3d 579, 605 [198 Cal.Rptr. 565].) Similarly, a burglar who, before entering a house through a garage, left a loaded handgun on a low wall outside the garage, was found to be "armed" in the commission of the burglary. (*People* v. *Garcia* (1986) 183 Cal.App.3d 335, 340, 350-351 [228 Cal.Rptr. 87].) So too a drug dealer who sold cocaine from his car was deemed to be "armed" when he kept a loaded .357 Ruger in an unlocked compartment in the back of his car. (*People* v. *Searle* (1989) 213 Cal.App.3d 1091, 1099 [261 Cal.Rptr. 898].) In each case the firearm was available to the defendant to use in furtherance of the underlying felony.

"Arming" is the focus of subdivision (a) of section 12022. Subdivision (a)(1) of that statute provides: "[A]ny person who is armed with a firearm in the commission or attempted commission of a felony shall, upon conviction of that felony or attempted felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished by an additional term of one year, unless the arming is an element of the offense of which he or she was convicted. This additional term shall apply to any person who is a principal in the commission or attempted commission of a felony if one or more of the principals is armed with a firearm, whether or not the person is personally armed with a firearm."

Subdivision (a)(2) of section 12022 (charged in this case) increases to three years the punishment for "arming" when the firearm is "an assault weapon, as defined in Section 12276, or a machinegun, as defined in Section 12200," whether or not arming is an element of the underlying offense of which the defendant has been convicted. Like subdivision (a)(1)'s additional one-year prison term for being armed with any firearm, subdivision (a)(2)'s three-year enhancement for being armed with an assault weapon or machinegun applies "to any person who is a principal [in the underlying offense] if one or more of the principals is armed with an assault weapon or machinegun whether or not the person is *personally armed* . . . ." (§ 12022, subd. (a)(2), italics added.)[3]

We now turn to the issue in this case.

---

[3]By making the liability for increased punishment extend to any principal whether or not "personally armed," subdivision (a)(2) of section 12022 imposes both personal and vicarious liability. (See *People* v. *Superior Court* (*Pomilia*), *supra*, 235 Cal.App.3d 1464, 1471.) In contrast, enhancement provisions that specify that a defendant be "personally armed" (cf. § 12022, subd. (c)) limit liability for increased punishment to "those who themselves commit the prohibited conduct." (*People* v. *Cole* (1982) 31 Cal.3d 568, 576 [183 Cal.Rptr. 350, 645 P.2d 1182].)

## III

■ As we have pointed out, for a defendant to be "armed" for purposes of section 12022's additional penalties, the defendant need only have a weapon available for use to further the commission of the underlying felony. In this case the Attorney General contends that when, as here, a defendant engaged in felony drug possession, which is a crime of a continuing nature, has a weapon available at any time during the felony to aid in its commission, the defendant is "armed with a firearm in the commission . . . of a felony" within the meaning of section 12022, subdivision (a). We agree.

Drug possession is indeed a "continuing" offense, one that extends through time. Thus, throughout the entire time the defendant asserts dominion and control over illegal drugs, the defendant is criminally liable for the drug possession. (*People* v. *Williams* (1971) 5 Cal.3d 211, 215 [95 Cal.Rptr. 530, 485 P.2d 1146]; *People* v. *Von Latta* (1968) 258 Cal.App.2d 329, 340-341 [65 Cal.Rptr. 651].) And when, at any time during the commission of the felony drug possession, the defendant can resort to a firearm to further that offense, the defendant satisfies the statutory language of being "armed with a firearm in the commission . . . of a felony." (§ 12022, subd. (a).)

Of assistance here is our decision in *People* v. *Fierro* (1991) 1 Cal.4th 173, 226-227 [3 Cal.Rptr.2d 426, 821 P.2d 1302], in which we held that liability for additional penalties for *use* of a firearm in the commission of a felony extends throughout a defendant's commission of the underlying felony.

In *Fierro*, we upheld a jury's finding that the defendant had used a firearm in committing a robbery (§ 12022.5), when, in demanding money from the robbery victim, the defendant did not display a firearm but seconds later shot and killed the robbery victim's husband. The killing, we concluded, facilitated the defendant's commission of the robbery: it prevented the husband from pursuing or identifying the defendant. We also concluded that because the crime of robbery was not complete when the defendant took the money but continued until the robber reached a place of temporary safety, the defendant had used a firearm *in the commission* of the robbery when during the continuing offense of robbery he used the gun to aid his escape. (*People* v. *Fierro, supra,* 1 Cal.4th at pp. 225-226.) In light of the legislative intent to discourage the use of firearms in connection with felonies, we deemed it "immaterial" in *Fierro* whether the defendant had used the gun "during the actual taking or against the actual victim," so long as he used it "in the commission" of the robbery, that is, *any time during and in furtherance of the robbery.* (*Id.* at p. 226.)

Applying this reasoning to the issue here—whether defendant was "armed in the commission" of the continuing offense of drug possession—it is immaterial whether defendant was present when police seized the assault rifle together with the cache of crack cocaine, so long as he had the firearm available for use in furtherance of the drug offense at any time during his possession of the drugs. From evidence that the assault weapon was kept in defendant's bedroom near the drugs, the jury could reasonably infer that, at some point during the felonious drug possession, defendant was physically present with both the drugs and the weapon, giving him ready access to the assault rifle to aid his commission of the drug offense.

Relying on a recent Court of Appeal decision, *People* v. *Balbuena* (1992) 11 Cal.App.4th 1136, 1139 [14 Cal.Rptr.2d 640], defendant contends that because he was not present when the police found the drugs together with the guns, he cannot be subject to section 12022's sentence increase for being "armed . . . in the commission . . . of a felony." We disagree.

In *Balbuena*, police officers executing a search warrant knocked and announced their presence at the defendant's residence and, receiving no response, forced entry. When the officers entered the living room through the front door, they saw the defendant and his wife lying on the floor beyond an open sofa bed that separated the officers from the couple. Near the front door, standing upright in a row, were three latched suitcases. From one of the suitcases, all of which contained men's clothing in the defendant's size, the officers retrieved quantities of heroin and cocaine, together with a photograph of the defendant and his wife. Another suitcase had cash and the defendant's identification papers. The third suitcase contained an unloaded pistol. On these facts, a jury found the defendant guilty on charges of possessing heroin and cocaine for the purpose of sale. (Health & Saf. Code, § 11351.) The jury also found that in the commission of these felonies the defendant was "personally armed with a firearm" within the meaning of section 12022, subdivision (c). (*People* v. *Balbuena*, *supra*, 11 Cal.App.4th at p. 1138.)

The Court of Appeal in *Balbuena* held that the evidence was insufficient to show that the defendant had a firearm available for either offensive or defensive use in his commission of the drug offenses; therefore, the court struck the statutory sentence enhancement for "arming." The court explained: "The gun was not within defendant's reach, nor had it been placed in a position of especially ready access, nor was it loaded and ready for use, nor was there anything to connect the gun to the commission of the offenses. As far as the evidence shows, defendant made no attempt to take the weapon out of the suitcase before the police entered, although he had as much as a

full minute to do so. Once the police had entered, access to the gun was cut off; defendant would have had to travel toward the officers and either directly past them or over the sofabed in order to reach the suitcase." (*People* v. *Balbuena, supra,* 11 Cal.App.4th at p. 1139.)

Like the Court of Appeal in this case, the *Balbuena* court focused on the defendant's relationship to the firearm at the time the police entered the house and recovered the drugs and the gun. Defendant argues this interpretation of the enhancement provision is supported by the rule of statutory construction that "[w]hen language which is susceptible of two constructions is used in a penal law, the policy of this state is to construe the statute as favorably to the defendant as its language and the circumstance of its application reasonably permit." (*People* v. *Overstreet* (1986) 42 Cal.3d 891, 896 [231 Cal.Rptr. 213, 726 P.2d 1288].) This rule does not assist defendant, however. The statutory language of section 12022 is not reasonably susceptible of the construction defendant urges us to adopt.

Section 12022, subdivision (a)(2) increases by three years the prison term of any person "armed" with an assault rifle "in the commission or attempted commission of a felony." As we explained earlier, the term "armed" in this statute means simply that the defendant had the prohibited weapon available for offensive or defensive use. And, as discussed previously, in *People* v. *Fierro, supra,* 1 Cal.4th 173, 225-226, this court concluded that the statutory language "in the commission of a felony" meant *any time during and in furtherance of the felony*. Therefore, by its terms, subdivision (a)(2)'s three-year sentence enhancement for being "armed" with an assault weapon applies whenever during the commission of the underlying felony the defendant had an assault weapon available for use in the furtherance of that felony. (§ 12022, subd. (a)(2).) Because, as we have pointed out, drug possession is a crime that continues throughout the time that the defendant has possession of the unlawful drugs, it follows that subdivision (a)(2)'s three-year sentence enhancement would apply to a defendant who has been found guilty of felonious drug possession and who, at some point during the illegal drug possession, had an assault weapon available for use in furtherance of the drug offense.[4]

This conclusion is consistent with the legislative purpose underlying the firearm penalty-enhancement provisions contained in section 12022: to deter those engaged in felonies from creating a risk of death or injury by having a firearm at the scene of the crime. (*People* v. *Reaves, supra,* 42 Cal.App.3d 852, 856.) The crime scene in a drug possession case is the place where the

[4]To the extent that *People* v. *Balbuena, supra,* 11 Cal.App.4th 1136, is inconsistent with this conclusion, it is disapproved.

defendant keeps his or her cache of illegal drugs. A firearm kept near the drugs creates an ongoing risk of serious injury or death from use of the weapon to protect the defendant during a drug sale, to guard against theft of the drugs, or to ward off police. Yet defendant would have us ignore the continuing nature of that risk and hold that someone armed with an assault weapon throughout an extended period of drug possession is subject to the additional penalties for armed offenders only if present during the police seizure of the assault weapon and the illegal drugs. To so hold would exempt the most notorious drug traffickers from the reach of section 12022's added penalties for "arming" if they happened to be temporarily absent from the crime scene when the police seized their stash of assault weapons and drugs.

Of course, contemporaneous possession of illegal drugs and a firearm will satisfy the statutory requirement of being "armed with a firearm in the commission" of felony drug possession only if the evidence shows a nexus or link between the firearm and the drugs. The federal courts, in interpreting the federal counterpart to California's weapons enhancement law (18 U.S.C. § 924 (c)(1)), have described this link as a "facilitative nexus" between the drugs and the gun. (See *United States* v. *Paulino* (1st Cir. 1994) 13 F.3d 20, 26.) Under federal law, which imposes specified prison terms for using or carrying a firearm " 'during and in relation to' " a crime of drug trafficking, "the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement *cannot be the result of accident or coincidence.*" (*Smith* v. *United States* (1993) 508 U.S. __, __ [124 L.Ed.2d 138, 153, 154, 113 S.Ct. 2050], italics added.) So too in California.

As we stated earlier, for a defendant to be subject to additional punishment for being armed with a firearm, California law requires the "arming" to be "in the commission or attempted commission" of the underlying felony. (§ 12022, subd. (a)(1).) With respect to felony drug possession, a defendant is armed "in the commission" of that crime so long as the defendant had the firearm available for use in furtherance of the drug offense at some point during the defendant's possession of the drugs. Thus, by specifying that the added penalty applies only if the defendant is armed with a firearm "in the commission" of the felony offense, section 12022 implicitly requires both that the "arming" take place *during* the underlying crime and that it have some "*facilitative nexus*" to that offense. Evidence that a firearm is kept in close proximity to illegal drugs satisfies this "facilitative nexus" requirement: a firearm's presence near a drug cache gives rise to the inference that the person in possession of the drugs kept the weapon close at hand for "ready access" to aid in the drug offense.

To summarize, when the prosecution has proved a charge of felony drug possession, and the evidence at trial shows that a firearm was found in close

proximity to the illegal drugs in a place frequented by the defendant, a jury may reasonably infer (1) that the defendant knew of the firearm's presence, (2) that its presence together with the drugs was not accidental or coincidental, and (3) that, at some point during the period of illegal drug possession, the defendant was present with both the drugs and the firearm and thus that the firearm was available for the defendant to put to immediate use to aid in the drug possession. These reasonable inferences, if not refuted by defense evidence, are sufficient to warrant a determination that the defendant was "armed with a firearm in the commission" of a felony within the meaning of section 12022.[5]

We now consider whether in this case the evidence offered at defendant's trial for felonious possession of cocaine base for the purpose of sale supports the jury's finding that he was armed with an assault weapon in his commission of the drug offense.

## IV

The jury found defendant guilty of possession of cocaine base for the purpose of sale (Health & Saf. Code, § 11351.5) based on evidence that police retrieved from defendant's bedroom 17.95 grams of rock cocaine together with a scale, plastic baggies, and Pyrex containers, all items that are commonly associated with the sale or manufacture of cocaine base. In the same room, under defendant's bed, were several firearms, including an unloaded Colt AR-15 semiautomatic rifle. We conclude that the rifle's close proximity to the drug cache, and its accessibility to defendant at any time while he possessed the illegal drugs, supported the jury's finding that defendant fell within the statutory prohibition of being armed with an assault weapon in committing the felony drug possession, thus subjecting him to the three-year sentence enhancement of section 12022, subdivision (a)(2). It was reasonable for the jury to infer from the proximity of the semiautomatic rifle

---

[5]The concurring opinion states that "the majority appears to establish a rebuttable presumption that a gun kept in 'close proximity to' drugs *was* intended for use in the criminal possession of the drugs and, hence, that the defendant was 'armed' in the commission of the possessory drug offense." (Conc. opn., *post*, at p. 1007, original italics.) This statement is wrong for two reasons.

First, evidence of a firearm found in close proximity to illegal drugs in a place frequented by the defendant warrants an *inference*, that is, "a deduction of fact that may logically and reasonably be drawn from another fact or group of facts found or otherwise established in the action." (Evid. Code, § 600, subd. (b).) The evidence just described does not require the trier of fact to assume any fact "from another fact or group of facts" and thus does not raise a *presumption*. (*Id.*, § 600, subd. (a).) The concurring opinion fails to grasp the difference between an inference and a rebuttable presumption.

Second, the concurring opinion implies that the facilitative nexus requirement is an intent requirement. It is not.

to the drug cache that defendant had the rifle available for his use to aid in the drug crime at some point during his felonious drug possession.

At oral argument before this court, defendant (apparently contending that he was denied adequate notice) stressed that the continuing nature of the crime of possessing cocaine base for the purpose of sale was not the theory on which the prosecution sought to prove that defendant was armed with an assault weapon in the commission of the possessory drug offense. We disagree.

The information charged defendant with possessing cocaine base for sale "*on or about*" March 21, 1990, the day on which the police seized the guns and the drugs. At trial, the prosecution offered evidence that defendant resided in the house where the drugs and weapons were found and that these items were kept in defendant's bedroom. In argument to the jury, the prosecutor emphasized the ongoing nature of the possessory drug offense, pointing out that the assault rifle was available to guard the drug stash during defendant's continuing possession of the drugs. Thus, the prosecutor argued, even though defendant was in a patrol car outside the house when police seized the firearm, defendant, for purposes of the charged felony of possessing cocaine base for sale, was "armed" with the assault rifle.[6]

Defendant further contends that the evidence supporting the jury's finding was insufficient because the assault rifle was unloaded and no ammunition

---

[6]Also at oral argument, defendant and his amicus curiae, California Public Defender's Association, argued that to be "armed" for purposes of the sentence enhancement provisions, the individual so charged must have a gun on the person or within immediate reach, and a potential victim must be present. Otherwise, they contended, imposing added penalties for "arming" would punish lawful firearm possession and thus run afoul of an individual's right "to keep and bear arms" as set forth in the Second Amendment to the United States Constitution: "A well regulated militia, being necessary to the security of a free state, the right of the people to keep and bear arms, shall not be infringed." One constitutional law treatise observes that "The [United States] Supreme Court has not determined, at least not with any clarity, whether the amendment protects only a right of state governments against federal interference with state militia and police forces (a 'state's right' theory) or a right of individuals against the federal and state government which would restrict the ability of any governmental unit to prohibit the private possession of certain types of firearms (an 'individual right' theory)." (2 Rotunda & Nowak, Treatise on Constitutional Law (2d ed. 1992) § 14.2, p. 347, fn. 4 ; and compare Van Alstyne, *The Second Amendment and the Personal Right to Arms* (1994) 43 Duke L.J. 1236 [arguing the right protected by the Second Amendment pertains to individuals] with Williams, *Civic Republicanism and the Citizen Militia: The Terrifying Second Amendment* (1991) 101 Yale L.J. 551 [arguing the Second Amendment grants a "collective" rather than an individual right].) In any event, assuming that, as defendant asserts, the Second Amendment protects the right of individuals to keep and bear arms, the United States Supreme Court has not treated that right as absolute. (See *United States v. Miller* (1939) 307 U.S. 174 [83 L.Ed. 1206, 59 S.Ct. 816] [upholding a federal statute prohibiting interstate transportation of sawed-off shotguns]; *Lewis v. United States* (1980) 445 U.S. 55 [63 L.Ed.2d 198, 100 S.Ct. 915] [upholding federal prohibition on gun ownership by convicted felons].) Therefore, imposing an additional term of imprisonment

was found in defendant's house. Although juries faced with deciding whether a defendant had a firearm available for use in the commission of a felony may consider the fact that the firearm was unloaded, the absence of ammunition does not preclude a finding that the defendant was armed with a firearm. This court has held that the additional penalties for armed offenders are applicable even when a firearm is not operable. (*People* v. *Nelums* (1982) 31 Cal.3d 355, 359-360 [182 Cal.Rptr. 515, 644 P.2d 201].) As *Nelums* explains, an inoperable gun still creates a risk of harm because its passive display "may stimulate resistance." (*Id.* at p. 360.) The same is true of an unloaded gun.

Drug dealers are known to keep guns to protect not only themselves, but also their drugs and drug proceeds; ready access to a gun is often crucial to a drug dealer's commercial success. For this reason, a jury may properly infer that a firearm kept in close proximity to illegal drugs in a place frequented by the defendant during a possessory drug offense was available for the defendant's use in furtherance of the drug possession. Here, the jury reasonably drew that inference from evidence that an assault rifle was kept in defendant's bedroom near the 17.95 grams of cocaine base that defendant possessed for the purpose of sale. Therefore, in striking the three-year sentence enhancement, the Court of Appeal erred.

■ Because the Court of Appeal struck the additional penalty on the ground of insufficient evidence, it did not reach an issue of instructional error pertaining to this sentence enhancement. In instructing the jury on the meaning of "armed with an assault rifle," the trial court gave a modified version of CALJIC No. 17.15, a standard jury instruction that defines the term "armed with a firearm" as "*knowingly* to carry a firearm or have it available as a means of offense or defense." (Italics added.) The trial court's modified instruction, however, left out the word "knowingly."[7] According to defendant, this omission requires setting aside the sentence enhancement. We disagree.

In finding defendant guilty of possessing cocaine base for the purpose of sale, the jury necessarily found, based on evidence presented by the prosecution, that the bedroom in which police found the cocaine base and the assault rifle was defendant's. Also recovered from that bedroom was a photograph of defendant posing with the assault rifle. On this evidence, it is

when a person possesses cocaine base for sale and keeps an assault rifle handy to the stash of illegal drugs would not violate the Second Amendment to the federal Constitution.

[7] As relevant here, the modified instruction told the jury that a person is armed with an assault rifle "when he simply carries an assault rifle or has an assault rifle available for use in either offense or defense."

not reasonably probable that, had the proper instruction been given, the jury would have made a finding favorable to defendant on the "arming" enhancement. (*People* v. *Wims* (1995) 10 Cal. 4th 293, 315-316 [41 Cal.Rptr.2d 241, 895 P.2d 77]; *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

CONCLUSION

To deter persons from creating a potential for death or injury that results from the very presence of a firearm at the scene of a crime, the Legislature enacted section 12022, which increases the prison term of anyone "armed with a firearm in the commission . . . of a felony." For purposes of this statute, a number of cases have construed "armed" as having a firearm available for offensive or defensive use. Section 12022 does not punish lawful gun possession; it only adds to the punishment of one who commits a felony and has a gun available to further the commission of that felony.

 A firearm kept together with illegal drugs creates an ongoing risk that serious injury or death will occur if the defendant uses the firearm for protection, to guard against theft of the drugs, or to ward off police. Consistent with legislative intent, we conclude that in cases of felony drug possession, evidence that a firearm was kept together with drugs in a place frequented by the defendant is sufficient to support a finding that the defendant was "armed with a firearm in the commission" of the felony drug offense. (§ 12022.)

Here, in close proximity to a cache of crack cocaine and drug manufacturing paraphernalia in his bedroom, defendant kept an AR-15 semiautomatic rifle, which was available for his use at any time during his possession of the illegal drugs. This evidence was sufficient to satisfy the requirement of section 12022, subdivision (a)(2) of being "armed" with an assault weapon in committing the underlying drug felony, thus subjecting defendant to the statute's three-year sentence enhancement.

The part of the Court of Appeal's judgment striking the three-year enhancement is reversed. In all other respects, the judgment of the Court of Appeal is affirmed.

Lucas, C. J., Mosk, J., Arabian, J., Baxter, J., and George, J., concurred.

**WERDEGAR, J.,** Concurring.—I agree with the majority that a person may be armed in the commission of a continuing drug offense at any time during the offense, not only at the time of arrest or search. To the extent my opinion for the Court of Appeal in *People* v. *Balbuena* (1992) 11 Cal.App.4th 1136

[14 Cal.Rptr.2d 640] appeared to suggest otherwise, the suggestion was inadvertent.

I also agree with the majority's clear statement that imposition of an arming enhancement, at least for a firearm not carried on the person, requires proof of a facilitative link between the gun and the crime. Thus, as I understand the majority's holding, a person who kept drugs or other contraband, such as stolen property, in his or her house and who, for unrelated purposes, also owned a firearm not situated so as to facilitate the possessory offense in any way, would not be subject to increased punishment under Penal Code section 12022. As the majority states: "[C]ontemporaneous possession of illegal drugs and a firearm will satisfy the statutory requirement of being 'armed . . . in the commission' of felony drug possession only if the evidence shows a nexus or link between the firearm and the drugs." (Maj. opn., *ante*, at p. 1002.) Imposition of the arming enhancement requires proof, whether direct or circumstantial, that the firearm was kept in a place of "ready access" in order to facilitate commission of the possessory offense. (*Id.* at p. 1000.)

I find less clear the majority's statement that "[e]vidence that a firearm is kept in close proximity to illegal drugs *satisfies* this 'facilitative nexus' requirement: a firearm's presence near a drug cache *gives rise to* the inference that the person in possession of the drugs kept the weapon close at hand for 'ready' access to aid in the drug offense." (Maj. opn., *ante*, at p. 1002 (italics added).) If, by this, the majority means merely that proximity is circumstantial evidence that, together with all the other evidence, *may in a given case* justify the trier of fact in finding a facilitative link between a weapon and the crime committed, I would agree.

Expanding on its remark, however, the majority states, apparently as a rule of law, that from proximity of drugs and gun in a place "frequented" by the defendant, a jury "may reasonably infer" that the proximity "was not accidental or coincidental." (Maj. opn., *ante*, at p. 1003.) This evidence, the majority declares, "if not refuted by defense evidence," is sufficient to support a section 12022 enhancement. (*Ibid.*)

With these statements the majority appears to establish a rebuttable presumption that a gun kept "in close proximity to" drugs *was* intended for use in the criminal possession of the drugs and, hence, that the defendant was "armed" in the commission of the possessory offense. The majority's assurance that no such presumption has been created (maj. opn., *ante*, at p. 1003, fn. 5) leaves me uncertain how the general rule of law announced today—that proximity is sufficient to show facilitation—*is* intended to operate.

In my view this case does not call for us to set forth a general rule that proximity does, or does not, per se establish "arming." The only question before us is whether the evidence here was sufficient to allow an inference this defendant was armed with an assault weapon in the commission of possession of cocaine base for sale. Our task is merely to determine whether a reasonable trier of fact could have found the prosecution sustained its burden of proving the enhancement beyond a reasonable doubt. (*People* v. *Tenner* (1993) 6 Cal.4th 559, 567 [24 Cal.Rptr.2d 840, 862 P.2d 840].) I would affirm the arming finding in this case because *all* the circumstances— the place and manner in which the weapons were stored, the type and number of weapons, their proximity to the drugs—together allow a reasonable inference the assault weapon was kept in a place of ready access in order to facilitate possession of illegal drugs.

Appellant's petition for a rehearing was denied September 21, 1995.