Filed 7/19/16  P. v. Ragan CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE, | C080548 |
| Plaintiff and Respondent, | (Super. Ct. No. 62073433A) |
| v. | |
| DANIEL PHILLIP RAGAN, | |
| Defendant and Appellant. | |

Defendant Daniel Phillip Ragan appeals from the trial court's order denying his Penal Code[1] section 1170.126 petition for resentencing on his convictions for maintaining a place for selling or using controlled substances and felon in possession of ammunition.  He contends there is insufficient evidence that he was armed with a deadly

---

[1]     Undesignated statutory references are to the Penal Code.

1

weapon during the commission of those offenses to support the trial court's finding that he was ineligible for resentencing. We affirm.

BACKGROUND

We take the facts of defendant's crimes from our unpublished opinion affirming his conviction.

Cameo James (Jodi), who by all accounts ran a drug house and was charged as a codefendant in this case, committed suicide after pleading guilty to the possession and sale of various drugs. Her teenage son, C. J., and various neighbors testified for the prosecution and presented compelling evidence that defendant either spearheaded the narcotics business or aided and abetted Jodi's operation out of her house on Oakview Drive in Roseville. C. J. testified defendant lived with him and his mother for several months until a few days before a SWAT team descended on the house, confiscated drugs and weapons from throughout the house, and arrested his mother. He saw defendant with a .38-caliber handgun while defendant was living at the house.

Jodi's mother testified that on one occasion while defendant was living with her daughter, she went to visit. Although she saw Jodi's car parked in the driveway, defendant would not allow her in the house. When she persisted, defendant told her to "get the hell off of that porch," followed by a threat that if she did not leave, he had "a .38 that would make [her] leave." She complied and did not report the incident to the police.

None of the neighbors got to know defendant after he began living at the house in their otherwise "nice" and "quiet" neighborhood. Some observed a marked increase in the number of visitors who went to the house at all hours of the night and day. Several testified they recognized defendant because of the number of tattoos he had all over his body. Although they testified that his appearance had changed substantially by the time of trial, when shown a picture taken at the time of his arrest, they identified defendant and

2

reported that he had lived in the house for several months during 2007. There were varying accounts of when he appeared to have moved out.

At 2:30 a.m. on August 1, 2007, a Roseville police officer was responding to a residential burglar alarm on Oakview Drive when he noticed an older Ford Crown Victoria parked close by with its parking lights on. There did not appear to be anyone in the vehicle. Suspicious, the officer made a U-turn, and when he pulled up behind the car, defendant popped up. Held at gunpoint, defendant explained that he lived in the house with his girlfriend and one of them had set off the burglar alarm. Because defendant was fidgety, spoke rapidly, and was sweating profusely, the officer believed he was under the influence of a drug.

A second officer and his K-9 partner, Drago, searched the car. They found 2.19 grams of methamphetamine in two baggies; the first officer found two hypodermic needles. Defendant was arrested and when booked, he stated he resided at 1714 Oakview Drive in Roseville. He was released on bail.

On August 22, 2007, police officers from both Citrus Heights and Roseville executed a search warrant at Jodi's house at 1714 Oakview Drive. They found both male and female clothing in the closet of the master bedroom, as if a couple was sharing the room together. Jodi was present during the search; defendant was not.

The police confiscated the following items from the master bedroom: usable quantities of methamphetamine; glass pipes; empty Ziploc baggies; a Ziploc baggie containing methadone tablets in a dresser drawer; marijuana; a loaded .38-caliber revolver; a box of .38-caliber ammunition on top of a dresser inside a black bag with the words "Tattoo gun" handwritten on the bag; unfired .357-Magnum revolver ammunition in an armoire drawer; a black mechanical gram scale with white crystalline residue on it in an armoire drawer; a black leather fanny pack on the bed containing a digital plastic gram scale; several hypodermic needles in an armoire drawer; two photographs of Jodi and defendant inside a wooden box on top of a dresser; and a videotape of defendant and

Jodi. Based on this evidence, an expert in the sale of narcotics testified that methamphetamine was actively sold from Jodi's house on Oakview Drive.

Five days later defendant was seen going through a back window at Jodi's house. He was arrested. When booked, he provided "1714 Oakview, Roseville, California 95661" as his address and stated he was a "[t]attoo artist." Again he was released on bail, only to be rearrested a couple of weeks later.

Following Jodi's failure to appear on the August 22 charges, a warrant was issued for her arrest. On September 14, 2007, a police officer stopped a white Ford Mustang driven by defendant; Jodi was a passenger. Defendant, sporting brass knuckles on his belt, dropped a baggie of marijuana as he stepped out of the car as ordered. During the ensuing search, officers found syringes in his pockets. One of the officers on the scene noticed that defendant had tattoos of revolvers on his body.

The officers searched the car. They found methamphetamine, glass pipes, various pills (including hydrocodone), and syringes. One baggie of methamphetamine was found on the front passenger's seat, and another was found in plain view on the "transmission hump" in the rear seating area. The pipes and hydrocodone were found inside a leopard-print purse on the floorboard of the vehicle, behind the front passenger's seat. The syringes were found inside another purse with a skull and crossbones design on the outside.

Defendant and Jodi were arrested. During an interview, defendant stated he and Jodi had broken up during the week of August 22 but had gotten back together. Again defendant exhibited signs of recent drug use. He tested positive for methamphetamine, amphetamine, and a marijuana metabolite.

A jury found defendant guilty of possession of methamphetamine, possession of a hypodermic needle, possession of a controlled substance, possession of methamphetamine and/or methadone while armed with a firearm, maintaining a place for selling or using a controlled substance, felon in possession of a firearm, felon in

4

possession of ammunition, transportation of methamphetamine, possession of a deadly weapon, driving under the influence of alcohol or drugs, being under the influence of methamphetamine, unauthorized possession of a hypodermic needle, and driving with a suspended or revoked driver's license, along with two on-bail allegations.

Defendant admitted two strikes and two prior prison term allegations, and the trial court sentenced him to 181 years to life in state prison. On appeal, we modified the sentence to stay imposition of sentence for possession of a controlled substance pursuant to section 654, and affirmed the judgment as modified.

Defendant subsequently filed a section 1170.126 petition seeking a reduction of his sentence to no more than 20 years. The trial court granted the petition as to possession of methamphetamine and denied it as to the remaining felonies on the ground that defendant was armed during the commission of those offenses. The trial court stayed the hearing on resentencing defendant pending resolution of this appeal.

DISCUSSION

Defendant contends there is insufficient evidence that he was armed during the commission of the maintaining a place for selling or using a controlled substance and felon in possession of ammunition offenses to support the trial court's finding that he was ineligible for resentencing on those convictions. We disagree.

Section 1170.126 allows defendants serving a life term for a third strike to petition for resentencing. (§ 1170.126, subd. (b).) Eligibility for resentencing is initially limited to defendants serving life terms for felonies that are neither serious nor violent. (§ 1170.126, subd. (e)(1).) Other factors can render a defendant ineligible for resentencing. One of the disqualifying factors, as cross-referenced in section 1170.126, subdivision (e)(2), renders an offense ineligible for recall of sentence if "[d]uring the commission of the current offense, the defendant used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person." (§ 667, subd. (e)(2)(C)(iii).)

5

In order to find defendant ineligible for resentencing, the trial court had to make a factual determination that he was armed with a deadly weapon during the commission of his offense. (*People v. Bradford* (2014) 227 Cal.App.4th 1322, 1331-1332.) This determination is retrospective in nature, similar to determining the factual nature of a prior conviction. (*Id.* at pp. 1337-1338.) We review a trial court's factual findings regarding the nature of a prior conviction for substantial evidence, viewing the record in the light most favorable to the judgment. (*People v. Jones* (1999) 75 Cal.App.4th 616, 633.)

A defendant is "armed" within the meaning of section 12022, subdivision (a)(1) "if the defendant has the specified weapon available for use, either offensively or defensively. [Citations.] . . . '[A] firearm that is available for use as a weapon creates the very real danger it will be used.' [Citation.] Therefore, '[i]t is the availability--the ready access--of the weapon that constitutes arming.' " (*People v. Bland* (1995) 10 Cal.4th 991, 997.) "[A]*rming* under the sentence enhancement statutes does not require that a defendant utilize a firearm or even carry one on the body." (*Ibid.*)

In *Bland*, the Supreme Court agreed with the People's contention "that when, as here, a defendant engaged in felony drug possession, which is a crime of a continuing nature, has a weapon available at any time during the felony to aid in its commission, the defendant is 'armed with a firearm in the commission . . . of a felony' within the meaning of section 12022, subdivision (a)." (*People v. Bland*, *supra*, 10 Cal.4th at p. 999.) The Supreme Court accordingly concluded that, "[f]rom evidence that the assault weapon was kept in defendant's bedroom near the drugs, the jury could reasonably infer that, at some point during the felonious drug possession, defendant was physically present with both the drugs and the weapon, giving him ready access to the assault rifle to aid his commission of the drug offense." (*Id*. at p. 1000.)

Defendant attempts to distinguish *Bland* by claiming it is limited to the facts of the case, a prosecution for the possession of drugs. Not so. The Supreme Court's holding

6

was not premised on the fact the defendant was convicted of a drug possession offense, but because the drug possession offense was a continuing crime. Since defendant was continuously criminally liable while he possessed the illegal drugs, an armed finding was appropriate if the fact finder could infer he had ready access to the firearm at any point during the drug possession, *Bland's* reasoning therefore applies to any continuing offense.

The crime of maintaining a place for selling or using controlled substances is codified by Health and Safety Code section 11366, which states in pertinent part: "Every person who opens or maintains any place for the purpose of unlawfully selling, giving away, or using any controlled substance . . . shall be punished by imprisonment in the county jail for a period of not more than one year or the state prison."

"Cases construing the terms 'maintaining' or 'opening' in reference to narcotics cases rely on earlier opinions which construed those terms in statutes proscribing maintaining alcohol-related nuisances during Prohibition. These were places whose proprietors meant them to be used for consumption or sale of alcohol. Similarly, the courts have held that Health and Safety Code section 11366 and its predecessor, section 11557, are aimed at places intended for a continuing course of use or distribution." (*People v. Shoals* (1992) 8 Cal.App.4th 475, 490; see also *People v. Vera* (1999) 69 Cal.App.4th 1100, 1102-1103 ["The defendant seems to suggest that a violation of section 11366 occurs if a person engages in the personal, sequential use of any of the specified substances in his or her residence. We do not read this section to cover mere repeated solo use at home. To 'open' means 'to make available for entry' or 'to make accessible for a particular purpose' [citation], and to 'maintain' means 'to continue or persevere in' [citation]. When added to the word 'place,' the opening or maintaining of a place indicates the provision of such locality to others"].)

Maintaining of a place for using or selling controlled substances is therefore subject to *Bland* as it is a continuing offense. Since felon in possession of ammunition is

7

a possessory offense, it, like the unlawful possession of drugs or a firearm, is a continuing crime, and therefore also subject to *Bland*.

Applying *Bland*, we find substantial evidence supports the trial court's ruling as to both offenses. Defendant's home was the location where he maintained a place for furnishing or using drugs, and a loaded firearm was found in his bedroom in the home. The trial court could reasonably infer that defendant would use his own bedroom and, since the maintaining crime was a continuous offense, defendant had the loaded firearm available for immediate offensive or defensive use while committing that crime. Since police found ammunition both near to and loaded in that same firearm, defendant was also armed while committing the continuous offense of felon in possession of ammunition. The trial court's denial of the petition as to these offenses is therefore supported by substantial evidence.

## DISPOSITION

The judgment (order) is affirmed.

/s/_____
Robie, J.

We concur:

/s/_____
Hull, Acting P. J.

/s/_____
Butz, J.