Filed 2/3/21  P. v. Pelayo CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E074077 |
| v. | (Super.Ct.No. RIF1506165) |
| CARLOS ALBERTO PELAYO, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. John D. Molloy, Judge. Affirmed.

Law Office of Zulu Ali & Associates and Zulu Ali for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Daniel Rogers, Kristen Chenelia and Matthew Mulford, Deputy Attorneys General, for Plaintiff and Respondent.

1

Law enforcement found 784 marijuana plants and 18 firearms on Carlos Alberto Pelayo's property, and prosecutors tried him for felony cultivating marijuana (Health & Saf. Code, § 11358, unlabeled statutory citations refer to this code). A jury found him not guilty of cultivating marijuana but convicted him of the lesser-included misdemeanor offense of simple possession of more than 28.5 grams of marijuana. (§ 11357, subd. (b)(2).)

Pelayo challenges his conviction because the trial judge admitted evidence about the firearms found at his home. Law enforcement found two revolvers and two rifles in his bedroom and 14 assorted firearms stored in a locked shipping container in his yard. The trial judge admitted evidence (photographs and testimony) about all the weapons based on the prosecutor's representation that they had all been found loaded, which he concluded tended to show Pelayo knew he needed to protect his marijuana crop.

However, trial testimony revealed all the firearms were in fact *unloaded*. At that point, the trial judge proposed to strike the evidence, but defense counsel declined and elicited testimony that one of the firearms was stolen and six others were unregistered. At the close of the prosecution case, defense counsel renewed his relevance objection to the firearm evidence, but the trial judge refused to strike it at that point. At closing, the prosecution used the fact that some weapons were not legally in Pelayo's possession to support the cultivation charge but conceded the weapons were not loaded.

Pelayo argues the prosecutor committed misconduct by representing that the firearms were loaded and the trial judge erred by admitting the firearms evidence over his relevance objection. We conclude the prosecutor didn't commit misconduct by making a factual error which she then admitted and avoided repeating in closing argument. We also conclude the trial judge didn't abuse his discretion by allowing evidence about the four unloaded firearms found in Pelayo's bedroom. As for the evidence he possessed 14 additional unloaded firearms stored in a locked shipping container, we conclude any error was harmless because Pelayo was convicted of the lesser-included possession misdemeanor, not the cultivation felony, and the evidence of possession was overwhelming.

Pelayo also argues the trial judge should have granted his motion for an acquittal because substantial evidence didn't support finding him guilty of either cultivation or possession with intent to sell. This objection is not well taken. Pelayo was not tried for possession with intent to sell and was acquitted on the cultivation charge. Construing the argument broadly, we conclude substantial—indeed overwhelming—evidence supported the simple possession conviction.

We therefore affirm the judgment.

## I

## FACTS

In August 2015, sheriff's investigators observed marijuana beds at Pelayo's Moreno Valley home and obtained a search warrant to investigate. When they entered the

property, they found Pelayo walking away from one of six irrigated plant beds, which they later determined held 784 marijuana plants. There was a hose with water running from it on the ground nearby.

Investigators didn't find anyone else on the property. They found evidence someone was living in the master bedroom, including mail addressed to Pelayo. The investigating officer said the other bedrooms didn't appear to be occupied. The investigators also recovered 18 unloaded firearms, four of them in the master bedroom and the rest locked inside a shipping container outside the home.

The Riverside County District Attorney's office charged Pelayo with one felony count of planting, cultivating, harvesting, drying, and processing marijuana[1] (§ 11358) and one felony count of possessing marijuana with intent to sell (§ 11359). After a preliminary hearing, the district attorney filed an information charging Pelayo with one count of felony cultivating marijuana.

Before trial, defense counsel moved to exclude evidence of the firearms. The prosecutor opposed, arguing an expert witness would testify that illegal marijuana growers often possessed loaded firearms to protect their crops.

The trial judge concluded evidence that Pelayo possessed a "number of firearms, all of them loaded" was probative of his guilt on the cultivation charge. He noted possession of loaded firearms could be relevant to establish someone at the home sought to protect a marijuana crop against theft. He also concluded the evidence was unlikely to

---

[1] For readability, we will refer to this as the cultivating marijuana count.

4

significantly prejudice Pelayo. He ruled both parties could discuss the firearms and the inferences the jury could draw from them.

At trial, a criminalist said she had tested some of the plants and confirmed they were marijuana. An expert investigator said he believed the plants were cultivated for sale, could produce a resale value of more than $700,000, and marijuana growers often have guards or arm themselves to protect their crops from theft.

Regarding the firearms, an investigator said they found four weapons—two revolvers and two rifles—and ammunition in the master bedroom. These firearms were not secured in a gun safe or display case. He said the revolvers and one of the rifles were found unloaded. However, he testified that the other rifle was loaded when they found it. Showing the investigator a photograph of the rifle next to some ammunition, the prosecutor asked if "the ammunition located next to the rifle [was] the exact ammunition that was recovered from inside the rifle? Meaning was it loaded?" The investigator said, yes.

The deputies found another 14 weapons locked inside a large metal CONEX shipping container located about 10 yards from the house. The container was padlocked, and all the firearms were unloaded. Eight of them were stored inside an oven inside the shipping container.

On cross-examination, defense counsel asked whether all the weapons except for the single rifle had been unloaded. The investigator responded, "No, zero. I did not find not one weapon that was loaded. They were all unloaded, sir." Defense counsel also

elicited testimony that one of the firearms had been stolen and six others were unregistered.

During her redirect, the prosecutor sought to clear up confusion about the photograph of the rifle and ammunition. She again asked whether the ammunition pictured next to the rifle had been found inside the rifle. The investigator responded, "The ammo was inside the bag, and the bag was next to the—to the rifle, but no, there was not a round in the chamber, no." The investigator also said the deputies had found loose ammunition but nothing loaded in a magazine or drum.

During a sidebar conference that wasn't reported, the trial judge told the parties he would sustain a relevance objection to the firearms evidence at that point. However, defense counsel withdrew his relevance objection because he had referred to the firearms in opening argument, claiming they were part of Pelayo's gun collection. The trial judge later summarized the discussion. "Pretrial, I had ruled that the firearms were coming in because I was informed by [the prosecutor] that all of the firearms were loaded. It turns out that the officer testified that none of the firearms were loaded. That was why I made my ruling. We then found ourselves after opening statement where you had already—you had indicated your guy was a gun collector, and all of the weapons were indeed—well, the [investigator] testified all of the weapons were indeed unloaded. I asked you what you wanted to do, and I told you at sidebar that if you wanted to object to relevance, I would sustain it. But it now supported your opening statement . . . [¶] . . . [¶] and you withdrew it at that time." Defense counsel agreed with this characterization.

Despite making that choice previously, defense counsel renewed his objection at the close of the prosecutor's case and asked that the evidence be stricken as irrelevant. The prosecutor opposed this request but acknowledged she had been mistaken in believing the weapons were loaded. She said the investigator's contrary testimony had surprised her and apologized for the factual mistake. Still, she noted defense counsel had elicited testimony that one of the weapons was stolen and others were unregistered. She argued that testimony was relevant to her expert's opinion that the weapons were linked to cultivation.

The trial judge said he would have excluded the evidence about the firearms in the outdoor container if he had known before trial that the weapons were unloaded. However, he concluded defense counsel could effectively counter the evidence by arguing, "Hey, look. Let's talk about this. How is this available for the drug trade? It's in a CONEX box with a padlocked door, shut in an oven, shoved in a suitcase. That makes all the sense in the world. Somebody's here to hold me up. Hold on, guys. I gotta open my CONEX box, pull out the oven, open this case, and load one of these. Now let's go." The trial judge therefore overruled defense counsel's renewed objection and refused to strike the evidence.

In closing, the prosecutor argued Pelayo had been caught cultivating a large marijuana crop outside his home and his participation had been proven by the fact that he was walking away from a running hose when the sheriff's deputies arrived. She argued the 18 firearms were for protection of the crops but acknowledged her error during the

opening statement in which she had said the firearms were all loaded. She predicted Pelayo's counsel would disagree he had used unloaded firearms to protect a crop, but she argued the presence of the six unregistered firearms and the stolen weapon, indicated he meant to use them to avoid being robbed. She also argued the extensive gardens, irrigation, fence posts, potting, and electrical wiring demonstrated Pelayo was cultivating the crops. She said the weapons and ammunition in Pelayo's bedroom were important evidence because they were maintained in a way that made it clear they were there for Pelayo to use defending himself.

Defense counsel argued the prosecutor had not proven Pelayo's guilt because her witnesses had not established Pelayo owned the property or how long he had lived in the house by producing a deed. He argued there was no evidence of sales records, trafficking activities, or drug paraphernalia in the home. Regarding the firearms, defense counsel argued the prosecutor's error in believing the weapons were loaded underscored the weaknesses in her case. He pointed out that the unloaded weapons—many of them stored outside the house—couldn't be used to protect the crops.

The jury found Pelayo not guilty of marijuana cultivation but guilty of the lesser-included misdemeanor offense of possessing more than 28.5 grams of marijuana. (Health & Saf. Code, § 11357, subd. (b)(2).) A second trial court judge sentenced Pelayo to three years of summary probation.

# II

# ANALYSIS

A. *Admission of Firearms Evidence*

Pelayo argues the prosecutor committed misconduct by introducing evidence that the firearms found at his home were loaded. He also argues the trial judge erred when it denied his motion to exclude evidence about the firearms as irrelevant and unduly prejudicial.

### 1. *Prosecutorial misconduct*

A prosecutor's use of deceptive or reprehensible methods to persuade the jury is misconduct and requires reversal when it infects the trial with such "'unfairness as to make the resulting conviction a denial of due process.'" (*People v. Friend* (2009) 47 Cal.4th 1, 29; *People v. Cunningham* (2001) 25 Cal.4th 926, 1000.)

When a misconduct claim is based on the prosecutor's comments before the jury, "'the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion.'" (*People v. Friend*, *supra*, 47 Cal.4th at p. 29; accord, *People v. Rivera* (2019) 7 Cal.5th 306.) Prosecutors may not knowingly present false evidence and must correct any falsity of which they are aware. (*People v. Seaton* (2001) 26 Cal.4th 598, 647.)

Here, the prosecutor's conduct resulted from error and she corrected the error as soon as it became evident at trial. The prosecutor initially believed the weapons were loaded and thought the evidence would support her belief. She appears to have told the

9

jury as much in her opening statement, which was reported but not transcribed. There's no indication the prosecutor knew the evidence would actually be to the contrary. Indeed, the investigator at first testified that one rifle in Pelayo's possession had been loaded before deputies unloaded it to render it safe for seizure.

It was only on cross-examination that the investigator clarified he was speaking about the general procedure for securing weapons, but that none of the weapons in Pelayo's possession had in fact been loaded. The prosecutor then immediately confirmed the direct testimony was mistaken and acknowledged her factual error in closing argument. By fully exploring, addressing, and correcting her initial error, the prosecutor acted appropriately. (See *People v. Seaton*, *supra*, 26 Cal.4th at pp. 647-648.) Under these circumstances, any misconduct when the prosecutor inadvertently relied on her belief that the guns were loaded did not result in unfairness that denied due process.

Pelayo argues it was inappropriate for the prosecutor to rely on the testimony elicited by defense counsel that some of the firearms were stolen and unregistered. However, at that point the trial court had ruled the evidence was relevant and admissible. Moreover, as we will discuss in part II.A.2., it's accepted that a defendant's possession of firearms is relevant to show they were in possession of illegal narcotics. (*People v. Bland* (1995) 10 Cal.4th 991, 1003 (*Bland*).) The prosecutor's argument about the evidence was therefore not misleading and doesn't support a claim of prosecutorial misconduct.

### 2. *Relevance of the firearms evidence*

Evidence is relevant if it has "*any tendency in reason* to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code § 210, italics added.) That makes relevance a low bar. (*People v. Villa* (2020) 55 Cal.App.5th 1042.) Trial judges have discretion to exclude relevant evidence where its probative value is substantially outweighed by the probability that admitting the evidence will unduly prolong the proceeding, prejudice the opposing party, confuse the issues, or mislead the jury. (Evid. Code, § 352; *People v. Tran* (2011) 51 Cal.4th 1040, 1046-1049.) However, evidence is prejudicial not because it's damaging to a defendant's case, but because it "'uniquely tends to evoke an emotional bias'" without regard to its relevance. (*People v. Kipp* (2001) 26 Cal.4th 1100, 1121.) We review the trial court's rulings on the admissibility of evidence for abuse of discretion. (*People v. Williams* (2008) 43 Cal.4th 584, 633-635.)

In *Bland*, our Supreme Court explained that finding firearms near illegal drugs can be relevant to drug charges. A jury found Bland guilty of possession of cocaine base for sale based on finding 17.95 grams of rock cocaine in his room along with drug paraphernalia commonly associated with the sale or manufacture of cocaine base. The jury also found Bland was armed while committing the drug possession offense, for purposes of imposing an enhancement, based on finding an unloaded semiautomatic rifle in the same room. (*Bland*, *supra*, 10 Cal.4th at p. 1003.) The Court explained "the rifle's close proximity to the drug cache, and its accessibility to defendant at any time while he

possessed the illegal drugs, supported the jury's finding that defendant fell within the statutory prohibition of being armed with an assault weapon in committing the felony drug possession." (*Ibid.*) Importantly for our case, the Court held "[i]t was reasonable for the jury to infer from the proximity of the semiautomatic rifle to the drug cache that defendant had the rifle available for his use to aid in the drug crime at some point during his felonious drug possession." (*Id.* at pp. 1003-1004.)

If the proximity of an unloaded weapon is sufficient to support a jury's finding that he possessed it to facilitate a drug crime, then the same kind of evidence clears the low bar of relevance in this case. As in *Bland*, evidence that Pelayo was keeping firearms near illegal drugs is relevant because doing so may support an inference that they exist "to protect the defendant during a drug sale, to guard against theft of the drugs, or to ward off police." (*Bland*, *supra*, 10 Cal.4th at p. 1002.) Thus, introducing the evidence that Pelayo kept weapons and ammunition close to hand supports an inference that he knew his marijuana grow was illegal and that he might need to protect it from theft.

It's important to note that the firearm in *Bland* was not loaded. It follows that a jury may infer from possession of an *unloaded* firearm that a defendant knew they were in possession of a controlled substance which they may need to protect, at least if ammunition is available and accessible. And while evidence that a weapon was loaded would strengthen the inference, it's clear that proximity and availability are the key factors. Here, Pelayo kept four firearms in his bedroom with a ready supply of ammunition. The weapons were easily available to him if he was home and thieves

12

showed up to steal his crop. Under those circumstances, we can't conclude the trial judge abused his discretion. Pelayo has made no claim of prejudice that could outweigh the probative value of this evidence.

The unloaded firearms locked away in a shipping container are a very different matter. It's hard to conceive of how that evidence could tend to make any element of the possession count more likely. It might tend to support the cultivation count because a larger scale drug operation could require a larger supply of weapons. In the end, though, we conclude we don't need to resolve the question whether the trial judge erred by admitting the evidence of the stored and unloaded firearms. Even if he did err, Pelayo would have to establish admitting the evidence prejudiced him, but there's no basis for concluding it's reasonably probable Pelayo would have received a more favorable verdict had the evidence been excluded. (*People v. Price* (1991) 1 Cal.4th 324, 429; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

The critical fact is the jury *acquitted* Pelayo of cultivating marijuana and instead convicted him of the lesser-included misdemeanor offense of possession of more than 28.5 grams of marijuana. The contested firearm evidence was introduced for the purpose of establishing primarily that Pelayo was in the illegal drug business and needed the firearms to protect his crops against theft. The prosecutor argued the weapons were important for Pelayo as a cultivator because they helped "protect the grow" and established Pelayo "wasn't just sitting there." But the jury acquitted him of that charge despite the evidence of the additional firearms.

The possession conviction, meanwhile, turned on evidence Pelayo had dominion and control over the marijuana plants with knowledge they were illegal. (*People v. Busch* (2010) 187 Cal.App.4th 150, 160; see also CALCRIM No. 2375.) The evidence overwhelmingly supports the jury's verdict on this count. Investigators testified they found several beds containing 784 marijuana plants on the property where Pelayo lived. An expert tested the plants and confirmed they were marijuana. The lead investigator testified Pelayo was alone on the property when they conducted the search and they found him tending to the plants. Pelayo appeared to be the only resident of the house. The master bedroom was occupied, contained mail addressed to Pelayo at the address of the house, and the other bedrooms were unoccupied. In addition, as we've discussed, Pelayo's bedroom contained four firearms in proximity to ammunition, which adds support for finding Pelayo knew the plants to be marijuana. All of this evidence, taken together, makes it exceedingly unlikely he would have received a more favorable verdict had the trial judge excluded the evidence of the stored firearms.

B.    *Motion to Acquit and Sufficiency of the Evidence*

Pelayo argues the trial court erred in denying his motion for a judgment of acquittal under Penal Code section 1118.1 because there is insufficient evidence he cultivated marijuana as required to be convicted under Health and Safety Code section 11358 or sold marijuana as required to be convicted under Health and Safety Code 11359. Pelayo argues the prosecution "failed to establish [he] was involved in any type of marijuana cultivation, planting, harvesting, or processing" because they didn't present a

14

deed for the property and the firearms evidence couldn't support a finding that he was guarding the marijuana crops because the weapons were unloaded.

It's not clear why this argument matters today. The prosecution dropped the possession for sale charge when it filed its information. And the jury found Pelayo not guilty of cultivating marijuana. Instead, Pelayo stands convicted of simple possession of more than 28.5 grams of marijuana, a violation of section 11357, subdivision (b)(2). Evidence of cultivation, planting, harvesting, or processing, or sales is not required to establish simple possession, so these arguments provide no basis for overturning the jury verdict.

Construing Pelayo's argument broadly, we conclude substantial evidence supports the jury's simple possession verdict. (*People v. Staten* (2000) 24 Cal.4th 434, 460 [we review the whole record in the light most favorable to the judgment for evidence which is reasonable, credible, and of solid value—such that "a reasonable trier of fact could have found defendant guilty beyond a reasonable doubt"].)

Simple possession of marijuana, under Health and Safety Code section 11357, requires dominion and control of more than 28.5 grams with knowledge of its presence and restricted character. (*People v. Busch*, *supra*, 187 Cal.App.4th at p. 160; see also CALCRIM No. 2375.) As we've already discussed, Pelayo resided on the property where law enforcement found 784 marijuana plants. He was the only person on the property when they executed the search, and he was tending to the marijuana plants by watering them at the time. Inside the house, deputies found evidence that only Pelayo occupied the

home. A rational juror could conclude based on this evidence that Pelayo had dominion and control over more than 28.5 grams of marijuana with knowledge of its restricted nature. The fact that he maintained four firearms and ammunition in his bedroom supports the inference that he knew the marijuana plants were illegal.

Pelayo argues someone else could have owned or rented the property and controlled the marijuana crop. However, it isn't our role on appeal to reweigh the evidence and come to a different conclusion than the jury. The jury acted reasonably in convicting Pelayo of simple possession of marijuana, and that is sufficient to uphold the verdict.

## III

## DISPOSITION

We affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

SLOUGH _____
J.

We concur:

McKINSTER _____
Acting P. J.

RAPHAEL _____
J.