Filed 8/22/16  In re Tony A. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re TONY A., a Person Coming Under the Juvenile Court Law. | B268843 |
| | (Los Angeles County Super. Ct. No. DK13147) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JESSICA H.,<br><br>    Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Nichelle Blackwell, Juvenile Court Referee.  Reversed.

Amy Z. Tobin, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, R. Keith Davis, Acting Assistant County Counsel, and Peter Ferrera, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

Jessica H. appeals from the jurisdiction finding and disposition order declaring her then three-year-old son, Tony A., a dependent of the juvenile court and removing him from her custody after the court sustained a petition pursuant to Welfare and Institutions Code section 300, subdivision (b),[1] alleging Jessica had endangered Tony's physical health and safety by possessing heroin while he was in her care. We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 30, 2015 Jessica took Tony to the state prison in Lancaster to visit her boyfriend, Victor D. While Tony was in the play area, Jessica was observed placing something in a candy bag and passing it to Victor, who poured it into his mouth and drank water. As Jessica was putting more items into the candy bag, correctional officers approached, handcuffed Victor and demanded Jessica turn over the bag. Five small packets of heroin were found in the bag, and two packets were later recovered from Victor. Jessica was arrested for offenses including introducing a controlled substance into a prison (Pen. Code, § 4573.6).

Correctional officers contacted the Los Angeles County Department of Children and Family Services (Department) when they were unable to reach Tony's maternal grandmother or maternal uncle, whose names Jessica had provided. Tony was taken into protective custody.

The Department filed a section 300 petition on September 2, 2015 containing a single count under subdivision (b). The petition alleged, "On 08/30/2015, the child [Tony A.'s] mother, Jessica [H.], placed the child in a detrimental and endangering situation in that the mother possessed heroin on her person, while the child was in the mother's care and supervision. On 08/30/2015, the mother was arrested for Possess Controlled Substance/Etc. in Prison. Such a detrimental and endangering situation established for the child by the mother endangers the child's physical health and safety, and places the child at risk of serious physical harm, damage and danger."

---

[1] Statutory references are to this code unless otherwise stated.

2

In its report for the September 2, 2015 detention hearing, the Department summarized an interview with the maternal grandmother, Maria H., who described Jessica as a "very caring and loving mother to her son." Maria also said "the child loves his mother very much." Maria explained Jessica met Victor through an inmate pen pal program and believed Jessica, who "ha[d] not been the same" since the suicide of Tony's father a few years earlier, was manipulated by Victor to bring him the drugs. The Department social worker commented, "Mother needs psychological assessment to determine if she is experiencing depression and low self esteem," but nonetheless "saw the positive side the mother has done a good job in caring for her son Tony [who] is a well adjusted child."[2] The report also stated, "[b]ased on interviews and recent incidents in mother's life the potential for future risk of abuse is low," and recommended continued detention and placement for Tony "until mother submits to a psychological evaluation to ensure welfare and safety of minor." The Department suggested Maria be considered for placement.

At the detention hearing the court ordered Tony detained in shelter care pending the next hearing and authorized the Department to release him to an appropriate relative. Following a pre-release investigation the court on September 14, 2015 released Tony to Maria.

In its report for the jurisdiction and disposition hearing the Department advised the court Jessica, who had pleaded no contest to introducing a controlled substance into a prison, had been sentenced to one year in county jail with a possible early release after four months based on good behavior. In an interview Jessica, then 28 years old, told the Department social worker she had experimented with methamphetamine and marijuana when she was 18 and 19 years old, but stopped using drugs because she did not like how they made her feel. Maria confirmed that Jessica was not a current user of illegal drugs.

---

[2]  The social worker also observed Tony "appeared to be in good health and well cared for. CSW did not observe any marks or bruises on minor [and] he was [a] very playful and happy kid. CSW could tell he was bonded with his mother Jessica[;] he cried for her when he was being taken away from the building."

Jessica expressed her desire to be with Victor when he was released from prison (he was serving a 15-year sentence for a home invasion robbery) and said they planned to get married.

Testifying at the jurisdiction and disposition hearing on November 12, 2016, Jessica described her decision to bring heroin into the prison as "the worst mistake" she had ever made. She explained, as a single mother and sole provider for her son, she did it because she hoped to make some money—Victor had told her he would pay her although she did not know the amount or how he would get the money to her. She obtained the heroin from another prisoner's wife who lived near Jessica and drove with her to the prison. Jessica insisted the woman, whose name she did not know, gave her the heroin right before they went inside and Tony never had access to it. Although Jessica had previously told the Department social worker she planned to marry Victor when he was released from prison, she testified she no longer intended to remain in a relationship with him because of everything she was going through with her son.

The court sustained the section 300, subdivision (b), allegation, explaining Jessica knew taking drugs into the prison was wrong, but did it anyway, and brought Tony with her, "creating an emotional risk to this child. Although [Jessica] testified that the child was in the play area, there is still an emotional risk to know she provided this drug transportation within the prison, knowing that the possibility of being arrested and having no one there, your child alone in the prison, that was highly inappropriate behavior." The court removed Tony from Jessica's custody and placed him with his maternal grandmother, where he was then living. The court ordered Jessica to complete 10 random drug tests and a full drug program if any tests were missed or positive, as well as a 12-step program, parenting classes and individual counseling. It further ordered monitored visitation at least three times per week for three hours per visit after Jessica was released from custody. The Department was given discretion to liberalize visitation.

**DISCUSSION**

1. *Standard of Review and Governing Law*

"'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court."'" (*In re I.J.* (2013) 56 Cal.4th 766, 773.) We review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence such that a reasonable trier of fact could find that the order is appropriate. (*Ibid.*; *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.)

Section 300, subdivision (b), authorizes the court to adjudge a child a dependent of the juvenile court if: "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . ." A true finding under subdivision (b) requires proof of: "(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) 'serious physical harm or illness' to the minor, or a 'substantial risk' of such harm or illness." (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 820; accord, *In re Noe F.* (2013) 213 Cal.App.4th 358, 366.) "The third element 'effectively requires a showing that at the time of the jurisdictional hearing the child is at substantial risk of serious physical harm in the future . . . .'" (*In re James R.* (2009) 176 Cal.App.4th 129, 135.) Cases finding a substantial physical danger to a child "tend to fall into two factual patterns. One group involves an *identified, specific hazard* in the child's environment—typically an adult with a proven record of abusiveness. [Citations.] The second group involves children of such tender years that the absence of adequate supervision and care poses an inherent risk to their physical health and safety." (*In re*

5

*Rocco M.*, at p. 824.)  As numerous courts have recognized, a juvenile court need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child.  (See, e.g., *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1216; *In re N.M.* (2011) 197 Cal.App.4th 159, 165.)

        2. *The Evidence Does Not Support the Juvenile Court's Jurisdiction Finding*

        There is no question Jessica's decision to transport drugs into the prison for Victor and to bring Tony with her demonstrated extraordinarily poor judgment and may have created a risk of emotional harm to Tony, who was no doubt confused and upset when his mother was arrested and he was taken into protective custody.  However, poor parental judgment that does not cause serious physical harm or illness or create a substantial risk of serious physical harm or illness is simply not a basis for jurisdiction under section 300, subdivision (b).  Likewise, even under section 300, subdivision (c), a separate basis for jurisdiction nowhere alleged in the petition, emotional harm will support dependency jurisdiction only if there is proof "[t]he child is suffering serious emotional damage, or is at substantial risk of suffering serious emotional damage, evidenced by severe anxiety, depression, withdrawal, or untoward aggressive behavior toward self or others" as a result of the conduct of the parent.  The "emotional risk" to Tony that was the primary concern of the juvenile court falls far short of meeting this elevated threshold.

        Seeking to avoid the juvenile court's faulty explanation for its decision to exercise jurisdiction, the Department argues Tony was placed at a substantial risk of physical harm because Jessica allowed him in the car with a woman she did not know, who provided her with heroin, thereby exposing the child to inherently dangerous people and a criminal lifestyle.[3]  In support of this theory, which was not alleged as a basis for subdivision (b) jurisdiction in the section 300 petition, the Department cites cases

---

[3]    During argument Tony's attorney suggested Jessica may have brought Tony with her to assist in the commission of the crime.  This was the first time she had taken the child with her to the prison; and, as noted in the detention report, a correctional officer had said it was common for visitors to bring children with them when they planned to commit crimes.

demonstrating that drug dealers are known to keep firearms at the ready and to use them when necessary. (See, e.g., *People v. Glaser* (1995) 11 Cal.4th 354, 367 [firearms are "'tools of the trade'" in the "'narcotics business'"]; *People v. Bland* (1995) 10 Cal.4th 991, 1005 ["[d]rug dealers are known to keep guns to protect not only themselves, but also their drugs and drug proceeds"].) The entirely speculative possibility the woman who supplied the heroin may have also had a gun during the drive to the prison, even if properly before the court, is not substantial evidence that Jessica's actions created a substantial risk of serious physical harm. Indeed, the actual transaction took place inside of the prison where there was little to no risk of physical harm to Tony.

Even if there had been some risk of physical harm to Tony as a result of Jessica's misjudgment, however, that single lapse, as egregious as it may have been, was an insufficient basis for the court to exercise jurisdiction absent any evidence of a current risk of serious physical harm to Tony. "'[P]revious acts of neglect, standing alone, do not establish a substantial risk of harm; there must be some reason beyond mere speculation to believe they will reoccur.'" (*In re J.N.* (2010) 181 Cal.App.4th 1010, 1025 [although children were injured in automobile accident in which father had driven drunk and mother was drunk as well, no basis for jurisdiction because there was no evidence parents, who expressed remorse and indicated they had learned from the incident, had ongoing substance abuse problem that placed children at risk of serious physical harm]; accord, *In re Rocco M.*, *supra*, 1 Cal.App.4th at p. 824; see *In re James R.*, *supra*, 176 Cal.App.4th at p. 135.) "In evaluating risk based upon a single episode of endangering conduct, a juvenile court should consider the nature of the conduct and all surrounding circumstances. It should also consider the present circumstances, which might include, among other things, evidence of the parent's current understanding of and attitude toward the past conduct that endangered a child, or participation in educational programs, or other steps taken, by the parent to address the problematic conduct in the interim, and probationary support and supervision already being provided through the criminal courts that would help a parent avoid a recurrence of such an incident." (*In re J.N.*, at pp. 1025-1026.)

There was no evidence in the case at bar from which to infer Jessica would again subject Tony to conditions potentially placing him at a substantial risk of serious physical harm.  By all accounts, Jessica was a loving and caring mother who readily admitted her mistake; and Tony was bonded to her.  Although Jessica initially had expressed her desire to marry Victor when he was released—certainly suggesting continued bad judgment— she shortly thereafter realized that would not be appropriate and, for the best interests of Tony, no longer wanted to be in a relationship with Victor.  Jessica had enrolled in a 12-step program before she was required by the juvenile court, had taken parenting classes and will be on probation for several years after her release.  Under these circumstances, there simply was no basis for the exercise of juvenile court jurisdiction over Tony.

## DISPOSITION

The jurisdictional finding and disposition order are reversed.


PERLUSS, P. J.


We concur:


ZELON, J.


SEGAL, J.

8